Filed 1/8/21

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>OLIVER PANOZO,<br><br>        Defendant and Appellant. | D076972<br><br><br>(Super. Ct. No. SCS302035) |

APPEAL from a judgment of the Superior Court of San Diego County, Roderick W. Shelton, Judge.  Affirmed in part, reversed in part, and remanded.

Siri Shetty, under the appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael P. Pulos and Joseph C. Anagnos, Deputy Attorneys General for Plaintiff and Respondent.

A jury convicted Oliver Panozo of various offenses in connection with two domestic violence incidents involving his former girlfriend. At sentencing, the court rejected Panozo's request to be placed on probation and enrolled in Veterans Court. Instead, it imposed a three-year middle term on the principal aggravated assault count.

Panozo challenges his sentence on appeal. Arguing the trial court was unaware of its statutory obligation to consider his service-related PTSD as a mitigating factor under Penal Code sections 1170.9 and 1170.91, he seeks remand for resentencing.[1] Tracing the relevant statutes and considering the record, we agree remand is necessary. Sections 1170.9 and 1170.91 *obligate* a court to consider a defendant's service-related mental health issues, including posttraumatic stress disorder (PTSD), as a mitigating factor in evaluating whether to grant probation and in selecting the appropriate determinate term. Although there was ample evidence of Panozo's service-related PTSD presented at sentencing, by all indications the court was unaware that it was *required* to consider this mitigating factor when it denied probation and imposed a three-year prison term. Accordingly, we must remand for a new sentencing hearing to permit the court to exercise its statutory obligations under sections 1170.9 and 1170.91. In all other respects, the judgment is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

Because Panozo challenges only his sentence on appeal, we draw our brief discussion of the underlying facts from the parties' briefs. Panozo entered the home of his ex-girlfriend L.A. in the middle of the night, put a knife to her throat, and then turned the knife on a friend of L.A.'s who had

_____

[1]     Further statutory references are to the Penal Code.

stayed the night. A month later, he violated a protective order, returned to L.A.'s home, held her against her will, and threatened to harm her family. In recorded jailhouse calls, Panozo cautioned L.A. not to report him or cooperate with investigators.

Based on these events, a jury convicted Panozo of two counts of assault with a deadly weapon (§ 245, subd. (a)(1), counts 2 & 3) and found true the attached arming allegation that he personally used a deadly and dangerous weapon. (§ 1192.7, subd. (c)(23)). It also convicted him of corporal injury to an intimate partner (§ 273.5, subd. (a), count 4); attempting to dissuade a victim from prosecuting a crime (§ 136.1, subd. (b)(2), count 6); disobeying a court order (§ 273.6, subd. (a), count 7); making a criminal threat (§ 422, count 8); two counts of attempting to dissuade a crime victim from reporting a crime (§ 136.1, subd. (b)(1), counts 9 & 10); and violating a criminal protective order (§ 166, subd. (c)(1)(A), count 11).[2]

Panozo filed a sentencing memorandum asking the court to "exercise its discretion and sentence him to a suspended prison sentence, grant probation, and permit him to enroll in Veteran's Court." Claiming that PTSD from serving as a Marine in Iraq "partially led him to where he is now," he noted his acceptance into the county jail's "Veterans Moving Forward Program" for mental health treatment. Highlighting his family support and military service, Panozo expressed willingness to comply with probation and stated he was "exactly the type of candidate for which Veteran's Court was designed."[3] In the event the court denied probation, he requested a two-year

---

[2]    After the jury hung on the burglary and criminal threat charges (counts 1 & 5), and the court dismissed those counts.

[3]    Modeled after drug courts and offered in many states, Veteran Treatment Courts aim to provide holistic and collaborative treatment to

term on the principal aggravated assault conviction (count 2) and probation on all remaining counts.

Panozo submitted several supporting exhibits. Letters from a psychiatrist confirmed his diagnoses for PTSD, alcohol use disorder, and unspecified anxiety disorder. A handwritten note from Panozo to the trial judge described his struggles with PTSD and combat-associated addiction at the time of his crimes. A picture showed Panozo in dress uniform; certificates reflected various promotions, awards, and coursework with the Marines. A letter from the Veterans Moving Forward program at the Vista Detention Facility, where Panozo was incarcerated presentence, described wellness classes Panozo was taking and indicated he was "learning to recognize the issues which resulted in his criminal behavior and healthy ways to change this behavior for the better." Appended to the letter was a reentry plan that Panozo proposed, requiring him to attend Veterans Village of San Diego Recovery Program as a condition of his probation.

In their sentencing memorandum, the People noted that Panozo was presumptively ineligible for probation (§ 1203, subd. (e)(2)).[4] They argued this was not the unusual case where the interests of justice would overcome that presumption (Cal. Rules of Court,[5] rule 4.413(c)) and asserted that the

_____

resolve mental health and addiction issues that underlie a military veteran's criminal conduct. (See, e.g., Moore, *Veterans Treatment Courts: Treating Problems to Prevent Crimes* (2019) 61 Orange County Lawyer 27, 27–28; Arno, *Proportional Response: The Need for More—and More Standardized— Veterans' Courts* (2015) 48 U.Mich. J.L. Reform 1039, 1045–1049.)

[4] A person who used a deadly weapon upon a human being in perpetrating a crime is presumptively ineligible for probation, except in "unusual cases in which the interests of justice would best be served if the person is granted probation." (§ 1203, subd. (e)(2).)

[5] Further rule references are to the California Rules of Court.

facts did not warrant probation (rule 4.414).[6]  Claiming there were no mitigating circumstances to consider, the People requested a six-year prison term, consisting of a three-year middle term on the principal assault count with consecutive sentencing on several subordinate counts.

The probation department made a similar recommendation of 6 years, 4 months in state prison.  The probation report did not find this an unusual case overcoming presumptive ineligibility for probation (rule 4.413(c)).  Nor did it find probation warranted given the nature of the offenses and Panozo's prior history (rule 4.414).  There were two mitigating factors listed in the probation report in support of a grant of probation—Panozo's expressed willingness to comply with reasonable terms of probation, and social factors suggesting he had an ability to comply with such terms.  (Rule 4.414(b)(3)−(4).)  By comparison, five aggravating factors were listed as supporting a denial of probation:  Panozo was armed; the victim was vulnerable; he inflicted physical and emotional injury; he had unsatisfactory past performance on probation; and his mental health and substance abuse problems potentially impaired his ability to comply with reasonable terms of probation.  (Rule 4.414(a)(2)−(4), (b)(2), (b)(4).)  Although the probation report mentioned Panozo's service in the Marine Corps from 2006 to 2010, deployment to Iraq in 2009, other-than-honorable discharge following a DUI conviction, PTSD diagnosis, and placement in the veterans module at county jail, none of these facts were listed as mitigating factors supporting a grant of probation.

---

[6]  Where a defendant is presumptively ineligible for probation under section 1203, subdivision (e), rule 4.413(c) sets forth factors bearing on the offender and the offense that "may indicate the existence of an unusual case in which probation may be granted if otherwise appropriate."  Rule 4.414 likewise lists criteria "affecting the decision to grant or deny probation."

At sentencing, Judge Shelton indicated he had reviewed the parties' briefs and the probation report before inviting argument. Defense counsel began by asking how a man who joined the Marines at age 18 and had no violent record could find himself where he was. He posited that Panozo must have been impacted by his service-related PTSD. In evaluating whether Panozo overcame his presumptive ineligibility for probation, counsel urged the court to consider that he "had no prior criminal violent offenses on his record, certainly just DUI's," which were attributable to his "military service where he coped with alcohol." "He used [alcohol] as a mechanism to deal with his mental distress, things he suffered during the war." A toxic relationship exacerbated his mental state, but counsel represented that Panozo was "a changed man" and had strong family support. Accordingly, he requested probation with a suspended sentence that would allow Panozo "to enroll in Veterans Court to heal physically and mentally and get the help that he deserves." In the alternative, he sought the lower term on count 2.[7]

Panozo and his father then addressed the court. His father explained that the family was suffering, and Panozo "put his life [at risk] when he was a Marine when serving in Iraq." Panozo told the court that he was a veteran and described his deployment in Iraq. He lost a fellow Marine in combat, and another—a close friend—to suicide. Those experiences left him with PTSD, and sleeplessness led to alcohol abuse. Psychiatric assistance and treatment from the Veterans Administration "proved beneficial." Alcohol had been his crutch, but a year of sobriety gave him a path forward. Commenting that

---

[7]     Assault with a deadly weapon carries a sentencing range of two, three, or four years. (§ 245, subd. (a)(1).) Defense counsel initially described a two-year term as the "middle term." He later clarified that he meant to request the two-year *lower* term.

many veterans experienced similar challenges, he requested a chance to continue rehabilitation with the Veterans Moving Forward program in Vista.

The prosecutor argued against probation, claiming "actions speak louder than words." Although Panozo struggled with PTSD and alcohol use, he had sought treatment for about a year "and still these incidents happened." Highlighting how he "terrorized" his former girlfriend, the prosecutor urged the court to impose a six-year total term.

The court then pronounced the sentence. Observing that Panozo was presumptively ineligible for probation, the court quoted the aggravating and mitigating circumstances listed in the probation report. Finding the aggravating circumstances outweighed the mitigating ones, the court denied probation with a referral to Veterans Court. Instead it imposed a three-year middle term on the principal aggravated assault conviction, weighing the use of a weapon and gravity of the crimes against Panozo's "very minimal criminal history." The court ran the remaining counts concurrently, staying some of the counts under section 654. The total sentence was three years in state prison, with a total of 673 credits. After imposing various fines and fees, the court wished Panozo luck and thanked him for his service.

DISCUSSION

Sections 1170.9 and 1170.91 obligate a sentencing court to consider a criminal defendant's qualifying service-related conditions as mitigating circumstances in making discretionary sentencing choices. Panozo claims the trial court was unaware of its obligations under these statutes when it denied probation and imposed the middle term on count 2. He seeks remand for

resentencing.[8] As we explain, the record strongly suggests the trial court was unaware of its mandatory sentencing obligations, necessitating remand.

### 1. *Overview of Sections 1170.9 and 1170.91*

Section 1170.9 has undergone substantial revisions since its original enactment decades ago. Although there are several cases construing earlier versions of the statute, there appears to be no published authority interpreting section 1170.9 in its present form, nor of the more recently enacted section 1170.91. In addressing Panozo's sentencing error claim, we therefore begin by examining the applicable statutes, providing historical background for context.

### a. *Historical background*

Section 1170.9 authorizes alternative commitment for eligible military veterans convicted of felonies. Originally enacted in 1982 to address combat veterans who served in Vietnam, the statute required sentencing courts to "consider whether the defendant was a member of the military forces of the United States who served in combat in Vietnam and who suffers from substance abuse or psychological problems resulting from that service." (Former § 1170.9; Stats. 1982, ch. 964, § 1.) If the defendant was such a person, the court had discretion to "order the defendant committed to the custody of federal correctional officials for incarceration for a term equivalent to that which the defendant would have served in state prison." (*Ibid.*) This basic framework remained in place when the statute was renumbered and amended in 1983 and did not change until statutory amendments took effect on January 1, 2007. (Former § 1170.9; Stats. 1983, ch. 142, § 121.)

---

[8] Panozo was released after this appeal was filed and is on parole through June 2023. He argues his release does not affect his appeal, as any excess credits resulting from a lower prison term imposed on remand could reduce the length of his parole. The People do not suggest otherwise.

As cases decided during this 23 year period made clear, the statutory dictate was "mandatory rather than permissive"—while it did not require the sentencing judge to choose federal incarceration for eligible veterans, it did require the judge to consider whether the defendant met the eligibility criteria. (*People v. Bruhn* (1989) 210 Cal.App.3d 1195, 1199 (*Bruhn*); accord *People v. Abdullah* (1992) 6 Cal.App.4th 1728, 1735 (*Abdullah*).) Consistent with its purpose of affording Vietnam veterans every opportunity for rehabilitative treatment, a proper exercise of the court's discretion would not be inferred on an ambiguous record. (*Bruhn, supra,* at pp. 1199−1200; see also *People v. Ruby* (1988) 204 Cal.App.3d 462, 467 (*Ruby*) [remanding where trial court determined defendant had service-related PTSD but misapprehended when alternative sentencing was authorized].) On the other hand, because the statute only provided for a commitment to federal custody, no abuse of discretion would be found where no appropriate federal program existed. (*Abdullah, supra,* at pp. 1736−1737; *People v. Duncan* (2003) 112 Cal.App.4th 744, 748.)

In 2006, the Legislature amended section 1170.9 to reach combat veterans returning from more recent wars in Iraq and Afghanistan. (Stats. 2006, ch. 788 (Assem. Bill No. 2586), § 1(d).) In extending alternative sentencing to all veterans, the Legislature disclaimed any intent to expand probation eligibility. (*Id.*, § 1(f).) Instead, it sought "to ensure that judges are aware that a criminal defendant is a combat veteran with these conditions at the time of sentencing and to be aware of any treatment programs that exist and are appropriate for the person at the time of sentencing if a sentence of probation is appropriate." (*Id.*, § 1(g).) Effective January 1, 2007, sentencing courts were required to hold a presentence hearing to determine whether the defendant was a combat veteran

9

experiencing "post-traumatic stress disorder, substance abuse, or psychological problems as a result of that service." (§ 1170.9, former subd. (a); Stats. 2006, ch. 788, § 2.) If a defendant met that criteria, was probation eligible, *and was placed on probation*, the court had discretion to order him or her committed to an appropriate "local, state, federal, or private nonprofit treatment program for a period not to exceed that which the defendant would have served in state prison or county jail." (§ 1170.9, former subd. (b); Stats. 2006, ch. 788, § 2.) This version of the statute remained in effect until January 1, 2011.

Only one published case construed section 1170.9 in this period: *People v. Ferguson* (2011) 194 Cal.App.4th 1070 (*Ferguson*). Elijah Ferguson, a combat veteran who served in Iraq, attributed his drunk-driving convictions to service-related substance abuse and PTSD. The trial court decided not to apply section 1170.9 for several reasons. (*Id.* at pp. 1090−1091.) Operating on the mistaken belief that a firearm use allegation was sustained, it determined Ferguson was ineligible for probation. (*Id.* at p. 1091.) It also found Ferguson failed to establish that he committed the offenses *because* of service-related PTSD. (*Ibid.*) Finally, to invoke alternative sentencing under section 1170.9, the court had to actually place the defendant on probation, which it said it was unlikely to do. (*Ibid.*) The appellate court agreed with Ferguson that the trial judge was incorrect in believing he was probation-ineligible. (*Id.* at p. 1092.) Nonetheless, that was only one of several reasons the judge gave for denying probation, and a single valid reason would suffice. (*Ibid.*) Alternative sentencing was not triggered under section 1170.9, former subdivision (b) unless "the court places the defendant on probation" (Stats. 2006, ch. 788, § 2), and it was clear to the appellate court that the trial judge

would not have granted probation given the severity of Ferguson's crimes. (*Id.* at p. 1093.)

Section 1170.9 was amended in 2010 to expand the categories of qualifying mental illnesses and eliminate the requirement of service in combat theater. (Stats. 2010, ch. 347 (Assem. Bill No. 674), § 1.)[9] In 2014, the Legislature modified section 1170.9 to *additionally* require courts to consider a convicted defendant's service-related health condition "as a factor in favor of granting probation." (Stats. 2014, ch. 163 (Assem. Bill No. 2098), § 1.) Whereas former subdivision (b) of section 1170.9 permitted alternative sentencing if the defendant was probation eligible *and actually placed* on probation (§ 1170.9, former subd. (b); Stats. 2006, ch. 788, § 2), revised subdivision (b) *obligated* a court to consider service-related health factors as a mitigating factor in favor of granting probation. This framework for section 1170.9 remains largely the same today.[10]

When the Legislature amended section 1170.9 in 2014, it also enacted a new statute requiring the court to consider a defendant's service-related "sexual trauma, traumatic brain injury, post-traumatic stress disorder,

---

[9] The statute also underwent minor revisions in 2012 and 2013. (Stats. 2012, ch. 403 (Assem. Bill No. 2371), § 1; Stats. 2013, ch. 46 (Sen. Bill No. 769), § 1.) These amendments are not pertinent to this appeal.

[10] In light of the 2014 amendments to the statute, we agree with Panozo that the reasoning of *Ferguson, supra,* 194 Cal.App.4th 1070 is no longer persuasive. *Ferguson* involved a prior version of section 1170.9, which required a sentencing court to first grant probation before considering whether to place the defendant in an alternative treatment program. (§ 1170.9, former subd. (b); Stats. 2006, ch. 788, § 2.) Since January 2015, courts have been required to consider a defendant's qualifying service-related condition as a mitigating circumstance in every case where the defendant is probation-eligible. (See § 1170.9, subd. (b)(1); Stats. 2014, ch. 163 (Assem. Bill No. 2098), § 1, eff. Jan. 1, 2015.)

substance abuse, or mental health problems" as a mitigating factor in selecting the appropriate determinate term under section 1170, subdivision (b). (§ 1170.91; Stats. 2014, ch. 163, § 2.) With the exception of recall procedures added in 2018 (Stats. 2018, ch. 523 (Assem. Bill No. 865), § 1), section 1170.91 remains unchanged since its original enactment.

b. *Operative statutory language*

We provide this statutory history solely for context. At the time of Panozo's sentencing in November 2019, section 1170.9 addressed the effect of service-related psychological conditions on the court's decision whether to grant probation. It provided in relevant part:

> "(a) In the case of any person convicted of a criminal offense who could otherwise be sentenced to county jail or state prison and who alleges that he or she committed the offense as a result of sexual trauma, traumatic brain injury, post-traumatic stress disorder, substance abuse, or mental health problems stemming from service in the United States military, the court shall, prior to sentencing, make a determination as to whether the defendant was, or currently is, a member of the United States military and whether the defendant may be suffering from sexual trauma, traumatic brain injury, post-traumatic stress disorder, substance abuse, or mental health problems as a result of his or her service. The court may request, through existing resources, an assessment to aid in that determination.[11]

> "(b)(1) If the court concludes that a defendant convicted of a criminal offense is a person described in subdivision (a), and if the defendant is otherwise eligible for probation, the court shall consider the circumstances described in subdivision (a) as a factor in favor of granting probation.

---

[11]    The most recent amendment to section 1170.9 replaces "he or she" and "his or her" in subdivision (a) with "the person" and "the person's." (Stats. 2019, ch. 497 (Assem. Bill No. 991), § 205, eff. Jan. 1, 2020.)

> "(2) If the court places the defendant on probation, the court may order the defendant into a local, state, federal, or private nonprofit treatment program for a period not to exceed that period which the defendant would have served in state prison or county jail, provided the defendant agrees to participate in the program and the court determines that an appropriate treatment program exists."

Courts are required as a general matter to consider the "needs of the defendant" in deciding whether to grant probation. (§ 1202.7.)[12] In evaluating those needs, section 1170.9, subdivision (d) directs that "the court shall consider the fact that the defendant is a person described in subdivision (a)."

In a parallel fashion, section 1170.91 addressed the effect of similar service-related conditions if the court decided to deny probation. At the time of Panozo's sentencing, subdivision (a) of that statute provided:

> "If the court concludes that a defendant convicted of a felony offense is, or was, a member of the United States military who may be suffering from sexual trauma, traumatic brain injury, post-traumatic stress disorder, substance abuse, or mental health problems as a result of his or her military service, the court shall consider the circumstance as a factor in mitigation when imposing a term under subdivision (b) of Section 1170. This

---

[12] Added to the Penal Code in 2007 (Stats. 2007, ch. 579, § 47), section 1202.7 provides: "The Legislature finds and declares that the provision of probation services is an essential element in the administration of criminal justice. The safety of the public, which shall be a primary goal through the enforcement of court-ordered conditions of probation; the nature of the offense; the interests of justice, including punishment, reintegration of the offender into the community, and enforcement of conditions of probation; the loss to the victim; and the needs of the defendant shall be the primary considerations in the granting of probation. It is the intent of the Legislature that efforts be made with respect to persons who are subject to Section 290.011 who are on probation to engage them in treatment."

13

consideration does not preclude the court from considering similar trauma, injury, substance abuse, or mental health problems due to other causes, as evidence or factors in mitigation."

The parties have not cited, nor have we found, published case authority construing the operative versions of sections 1170.9 and 1170.91. Deferring to their unambiguous plain meaning, as we must (see *People v. Ruiz* (2018) 4 Cal.5th 1100, 1105–1106; *People v. Colbert* (2019) 6 Cal.5th 596, 603), the statutes speak in terms that are mandatory rather than permissive. Section 1170.9, subdivision (a) provides that a sentencing court "shall . . . make a determination" as to whether a convicted defendant has a qualifying service-related condition. If the defendant meets that criteria, the court "shall consider" that circumstance under subdivision (b) "as a factor in favor of granting probation." Likewise, section 1170.91, subdivision (a) provides that a sentencing court "shall consider" the defendant's qualifying service-related condition "as a factor in mitigation" when selecting the appropriate determinate term. Despite statutory amendments in the intervening years, the import of earlier cases still holds true. By their plain language, sections 1170.9 and 1170.91 unambiguously *obligate* a sentencing court to consider a defendant's service-related PTSD, substance abuse, or other qualifying conditions in making discretionary sentencing choices. (See *Bruhn, supra,* 210 Cal.App.3d at p. 1199; *Abdullah, supra,* 6 Cal.App.4th at p. 1735.)

Explaining why an ambiguous record would necessitate remand, earlier cases emphasized the statutory purpose of providing veterans every opportunity to obtain meaningful rehabilitative treatment. (*Bruhn, supra,* 210 Cal.App.3d at p. 1199; see, e.g., *Ruby, supra,* 204 Cal.App.3d at p. 468.) Time has only strengthened the Legislature's resolve to mandate special consideration for affected veterans at sentencing. In overhauling section

14

1170.9 in 2006, the Legislature sought to ensure that judges were aware of appropriate treatment programs for combat veterans with qualifying service-related conditions. (See Stats. 2006, ch. 788 (Assem. Bill No. 2586), § 1(g).) The 2014 amendments went further, requiring courts to consider a defendant's service-related condition as a factor in favor of granting probation—not just as a consideration *if* probation were granted—and mandating consideration of service-related conditions in determinate sentencing even if probation were denied. (Stats. 2014, ch. 163 (Assem. Bill No. 2098), §§ 1–2.) Given these developments, there is no basis to depart from the pronouncement in *Bruhn* that a court's compliance with the mandates of sections 1170.9 and 1170.91 cannot be inferred from an ambiguous record.[13] Accordingly, we must determine whether our record unambiguously reflects compliance.

2.    *At a minimum, the record is ambiguous as to whether the court was aware of its mandatory obligations under sections 1170.9 and 1170.91, necessitating remand.*

Panozo argues the trial court failed to consider his service-related PTSD as a mitigating factor when it denied probation and imposed the three-

---

[13]    *Bruhn* further advises courts to "affirmatively indicate an exercise of discretion under section 1170.9" and cautions that "[a]n intelligent exercise of discretion cannot be inferred from a *silent* record." (*Bruhn, supra,* 210 Cal.App.3d at p. 1200, italics added.) In so stating, the *Bruhn* court did not explain what it meant by a "silent" record. Section 1170.9 was "obliquely mentioned" at sentencing in *Bruhn*, but there was nothing to indicate that the trial court understood its obligation to consider alternative sentencing. (*Ibid.*) As will be discussed, our record lacks even an oblique reference to the relevant statutes and provides no basis to believe the sentencing court was aware of its mandatory obligations, strongly suggesting the opposite conclusion. We therefore have no occasion to address what would happen if the record were silent as to the *reasons* for a given discretionary sentencing choice but otherwise supported an inference that the court was aware of its legal obligations under sections 1170.9 and 1170.91.

year middle term on count 2. We review a trial court's sentencing decisions for an abuse of discretion, evaluating whether the court exercised its discretion "in a manner that is not arbitrary and capricious, that is consistent with the letter and spirit of the law, and that is based upon an 'individualized consideration of the offense, the offender, and the public interest.' " (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.) An abuse of discretion is found where the court "relies upon circumstances that are not relevant to the decision or that otherwise constitute an improper basis for decision." (*Ibid.*) "A failure to exercise discretion may also constitute an abuse of discretion." (*Id.* at pp. 847−848.) " 'A court which is unaware of the scope of its discretion powers can no more exercise that 'informed discretion' than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record.' " (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391 (*Gutierrez*).)

A careful review of the sentencing record demonstrates that despite ample references to Panozo's service-related PTSD, there is no indication the court understood its *obligation* to consider that fact as a circumstance in mitigation when making discretionary sentencing choices. Indeed, the opposite inference emerges. Panozo's sentencing brief asked for probation, referenced his service-related PTSD, and provided documentation to support his diagnosis and request for treatment. And defense counsel argued extensively at sentencing that his client's crimes were the byproduct of his military service, warranting probation or imposition of the lower term. But neither the briefs nor the argument referenced sections 1170.9 or 1170.91 or suggested the court was *obligated* to consider Panozo's service-related PTSD as a mitigating factor. These statutes were likewise not referenced in the People's sentencing brief or argument. Indeed, the prosecutor maintained

16

there were *no* circumstances in mitigation.  And although the probation report described Panozo's military service and PTSD diagnosis, it did not list these circumstances among the mitigating factors supporting a grant of probation or imposition of the lower term.  At sentencing, the court indicated it had read the parties' submissions and the probation report.  But none of these materials, or the parties' arguments, spoke to the court's mandatory obligations under sections 1170.9 and 1170.91.

Apart from the written submissions and arguments, the trial court's oral pronouncements reveal no awareness of its obligations under sections 1170.9 and 1170.91.  Faced with uncontested evidence that Panozo had served as a combat veteran in Iraq and attributed his criminal behavior to service-related PTSD and substance abuse, the court made no eligibility determination as to whether he had a qualifying service-related condition. (§ 1170.9, subd. (a).)  In addressing the request for probation and placement in Veterans Court, it recited the aggravating and mitigating factors listed in the probation report.  Tracking the probation report, two mitigating factors were noted—Panozo's expressed willingness to comply with the reasonable terms of probation, and his ability to do so given his age, education, health, and family ties.  Panozo's service-related PTSD was not mentioned. (§ 1170.9, subd. (b)(1).)  Likewise, the court identified just one mitigating factor in imposing the middle term on count 2—Panozo's "very minimal criminal history"—and did not mention his service-related PTSD. (§ 1170.91.)  The minutes do not reference sections 1170.9 and 1170.91, and nothing in the record otherwise supports an inference that the court was

17

aware of its obligations under those statutes in exercising its sentencing discretion.[14]

The court was plainly aware that Panozo served in Iraq, struggled with PTSD and alcohol use, and requested probation and treatment through Veterans Court. It closed by thanking Panozo for his service: "it's never easy putting someone in prison, . . . especially someone who did fight for our country." But as Panozo observes, nothing indicates the court appreciated that it was *required* to consider his service-related PTSD as a mitigating factor in denying probation and imposing the three-year middle term. To the contrary, the court listed the mitigating and aggravating factors it considered on the record, and Panozo's service-related PTSD was not among them.[15] While the People are correct that sentencing courts are generally presumed to have acted in accordance with legitimate sentencing objectives (see *Ferguson, supra,* 194 Cal.App.4th at p. 1091; Cal. Rules of Court, rule 4.409), we cannot rely on that presumption here.

" 'Defendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court.' " (*Gutierrez, supra,* 58

---

[14] For example, there is no indication Panozo filed the Judicial Council's optional MIL-100 form, which notifies the court of a defendant's military status and provides sentencing information regarding sections 1170.9, 1170.91, and 1001.80. (See *Rights and Protections for Veterans & Military Families* (<https://www.courts.ca.gov/37705.htm> [as of Jan. 7, 2021], archived at <http://perma.cc/X9AL-Q278>).)

[15] To the extent Panozo suggests the court used his military service *against* him in listing various aggravating factors, we disagree. Section 1170.9, subdivision (b)(1) merely adds a defendant's service-related PTSD as a mandatory mitigating factor without altering standard criteria affecting the grant or denial of probation. Consistent with rule 4.414(b)(4), the trial court was entitled to consider whether Panozo's "health, mental faculties, [or] history of alcohol or other substance abuse" impacted his *ability* to comply with reasonable terms of probation.

Cal.4th at p. 1391.)  In an analogous context, Division Seven of the Second Appellate District recently explained that where the record is not silent, but rather is "at the very least ambiguous as to whether the court understood its [statutory] obligation to consider youth-related mitigating factors at sentencing before making the discretionary sentencing decision required by Section 190.5, subdivision (b), remand is appropriate." (*People v. Ochoa* (2020) 53 Cal.App.5th 841, 853 (*Ochoa*).)  The *Ochoa* court did not fault the trial court for its misunderstanding, noting that neither the People nor defense counsel had suggested a statutory obligation existed, but nevertheless found remand necessary for the court to consider its sentencing choices under the correct standard.  (*Ibid.*)

We follow the same course here.  There is no evidence the trial court was aware of its statutory obligation to consider service-related mitigating factors at sentencing—rather, all indications are to the contrary.  Defense counsel did not cite the applicable statutes, nor did he otherwise explain that the court was *required* to consider these service-related issues as factors in mitigation.  And neither the prosecution nor the probation department acknowledged the issues as mitigating circumstances.  Given the court's rejection of the prosecution's requests to impose the upper term and run subordinate counts consecutively, there is no indication that remanding for resentencing to permit consideration of sections 1170.9 and 1170.91 would be an idle act.  (See *People v. Barber* (2020) 55 Cal.App.5th 787, 814 ["When a court is unaware of its discretion, the remedy is to remand for resentencing unless the record clearly indicates that the trial court would have reached the same conclusion if it had been aware of its discretion."].)  Here, as in *Ochoa,* the court's apparent failure to consider mandatory mitigating factors at sentencing necessitates remand.  (*Ochoa, supra,* 53 Cal.App.5th at p. 853.)

19

Citing *People v. Scott* (1994) 9 Cal.4th 331, the People argue Panozo forfeited his claim by failing to object when the court did not list his service-related PTSD as a mitigating factor. *Scott* held that "complaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal." (*Id.* at p. 356.) But Panozo does not challenge the manner in which the trial court *exercised* its sentencing discretion but rather its apparent misapprehension of statutory sentencing obligations. Once Panozo "allege[d] that he . . . committed the offense as a result of . . . [PTSD] . . . stemming from service in the United States military" (§ 1170.9, subd. (a)), the court was statutorily required to make an eligibility determination and consider service-related mitigating factors at sentencing. There is no indication the court did either, and forfeiture in this context is inappropriate. (See *In re D.L.* (2012) 206 Cal.App.4th 1240, 1244 [no forfeiture where minor was not challenging the court's failure to state reasons for a discretionary sentencing choice but rather its failure to comply with its statutory obligations to consider his suitability for deferred entry of judgment]; *In re Sean W.* (2005) 127 Cal.App.4th 1177, 1181–1182 [no forfeiture where defendant's claim was that the court misapprehended its discretion, not a challenge to *how* it exercised that discretion].)[16]

Ultimately, this case follows much the same path as *Bruhn, supra,* 210 Cal.App.3d 1195, where materials submitted at sentencing reflected the defendant's service-related PTSD but the trial court made no further comment in denying alternative sentencing and imposing a middle term. (*Id.* at p. 1198.) Rejecting an argument similar to that raised by the People

---

16    Our conclusion that there was no forfeiture eliminates the need to address Panozo's alternative claim that trial counsel's failure to object amounted to constitutionally ineffective assistance.

here—that express findings were not required and statutory compliance should be presumed—the appellate court held that a proper exercise of discretion could not be presumed. (*Id.* at p. 1199.) The People's attempt to distinguish *Bruhn* based on Panozo's presumptive ineligibility for probation is unavailing. Nothing in section 1170.9 changes a court's statutory obligations where the defendant is merely *presumptively* ineligible for probation. In such a case, a court must consider the defendant's service-related PTSD (or other qualifying condition) as a mitigating circumstance in evaluating whether the case is *unusual* so as to overcome the presumption and warrant a grant of probation.

In short, our record necessitates remand because it is, at the very least, ambiguous as to whether the trial court was aware of its statutory obligations under sections 1170.9 and 1170.91. Pursuant to section 1170.9, subdivision (a), the trial court on remand must "make a determination" as to whether Panozo may have a qualifying service-related health condition.[17] An affirmative finding will obligate the court to consider that circumstance "as a factor in favor of granting probation" (§ 1170.9, subd. (b)(1)). If probation is granted, the court may consider placing Panozo in an appropriate treatment program (§ 1170.9, subd. (b)(2)). But if probation is denied, it must consider any service-related qualifying condition as a mitigating factor in selecting the appropriate determinate term (§ 1170.91).

---

[17] This issue appeared uncontested at the original sentencing hearing.

## DISPOSITION

The matter is remanded for a new sentencing hearing at which the trial court should satisfy its statutory obligations under sections 1170.9 and 1170.91.  In all other respects, the judgment is affirmed.


DATO, J.

WE CONCUR:


HUFFMAN, Acting P. J.


IRION, J.