Filed 7/27/22 (unmodified opn. attached)

**CERTIFIED FOR PARTIAL PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re ERNESTO L., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>ERNESTO L.,<br><br>     Defendant and Appellant. | A162151<br><br>(Alameda County<br>Super. Ct. No. JV-024273-08)<br><br><br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING<br><br>[NO CHANGE IN JUDGMENT] |

BY THE COURT:

It is ordered that the written opinion filed on July 12, 2022, is modified so that footnote 10 reads as follows:

On February 17, 2022, nearly a year after this appeal was taken, Ernesto's appellate counsel filed a motion to expedite the appeal and the related habeas proceeding. We granted the motion, even though counsel had filed four omission letters, each requiring a record augmentation; requested

1

and obtained two extensions of time to file the opening brief; and filed an opening brief of over 100 pages. Although some of the delays were caused by circumstances outside counsel's control, some were not.

This modification does not change the judgment. (Cal. Rules of Court, rule 8.264(c)(2).) The petition for rehearing is denied.

Dated:

_____

Humes, P.J.

*In re Ernesto L.* A162151

2

Filed 7/12/22 (unmodified opinion)

**CERTIFIED FOR PARTIAL PUBLICATION***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| In re ERNESTO L., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ERNESTO L.,<br><br>    Defendant and Appellant. | A162151<br><br>(Alameda County<br>Super. Ct. No. JV-024273-08) |

Ernesto L. appeals from a juvenile court dispositional order committing him to the Division of Juvenile Justice (DJJ) after he admitted to committing assault with a firearm. He raises numerous claims, but the principal one involves his entitlement to precommitment credits. Generally, if a minor is removed from a parent's physical custody after being adjudged a ward of the court, the dispositional order must "specify that the minor may not be held in physical confinement for a period in excess of the middle term of imprisonment" that could be imposed on an adult convicted of the same

---

* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II.C. and II.D.

1

offense. (Welf. & Inst. Code, § 726, subd. (d)(1).)[1] But if a minor is committed to DJJ in particular, the juvenile court has discretion, "based upon the facts and circumstances," to set an even lower maximum term of physical confinement. (§ 731, subd. (b).) The question presented here is whether the court may elect to apply precommitment credits against the theoretical maximum term under section 726—which we will refer to as the "maximum exposure term"—and not the actual maximum term set under section 731— which we will refer to as the "maximum custodial term."

Relying on *In re A.R.* (2018) 24 Cal.App.5th 1076 (*A.R.*), the only published appellate case on the subject at the time, the juvenile court applied Ernesto's precommitment credits, which totaled over two years, against the maximum exposure term of 14 years, 8 months, not the maximum custodial term of three years. In the published portion of this opinion, we disagree with *A.R.* and hold that when a minor is committed to DJJ, a juvenile court must apply the minor's precommitment credits against the maximum custodial term.[2] Because the record establishes the juvenile court would have set a higher maximum custodial term had it realized Ernesto's credits would apply against that term, we remand for the court to re-set a maximum custodial term and apply the credits against it.[3]

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise noted.

[2] We publish our holding because of our disagreement with *A.R.*, although we recognize that most juveniles can no longer be committed to DJJ, which is set to close on June 30, 2023. (§ 736.5, subds. (b)–(c), (e).)

[3] In light of this disposition, we need not reach Ernesto's claims that the juvenile court lacked the power to modify its original dispositional order. We would reject those claims in any event because, among other reasons, the juvenile court modified the dispositional order before it entered the DJJ commitment order. (See, e.g., § 775 [any order of juvenile court pertaining to "any person subject to its jurisdiction may at any time be changed, modified,

In the unpublished portion of this opinion, we disagree with Ernesto that the juvenile court erred by committing him to DJJ under section 602.3 and by relying on prior misdemeanors when calculating the maximum exposure term. We also accept the Attorney General's concessions that the maximum exposure term must be reduced and that Ernesto's number of precommitment credits must be updated, and we modify the judgment accordingly. Otherwise, we affirm the judgment as modified.[4]

## I.
### FACTUAL AND PROCEDURAL BACKGROUND

The issues on appeal do not require a detailed discussion of the underlying facts. After several gang-related shootings in and around Union City, officers from various jurisdictions formed a plan to arrest suspects they believed were using a stolen car.[5] The night of June 18, 2018, officers located the car and followed it in unmarked cars as it traveled throughout the area. The car began circling a Union City neighborhood associated with the suspects' rival gang, and the officers decided to execute a "Vehicle Containment Technique," in which one police vehicle "stops in front of the suspect vehicle and reverses into the suspect vehicle's front bumper" while a second police vehicle "simultaneously closes in on the suspect vehicle from

---

or set aside"]; cf. *People v. Karaman* (1992) 4 Cal.4th 335, 344–345 [trial court lacks jurisdiction to modify prison sentence once judgment is executed, which occurs when commitment document is delivered to custodial officer].)

[4] By separate order, we deny Ernesto's petition for writ of mandate or habeas corpus, which raises many of the same claims presented in this appeal. (*In re Ernesto L.*, A164425.)

[5] The facts in this paragraph are drawn from the probation department's dispositional report.

3

behind until the bumpers are locked and the suspect vehicle is securely contained between both officer vehicles."

Two Fremont police officers initiated the technique when the suspects' car was stopped at a stop sign. Occupants of the suspects' car immediately started shooting at the officers, neither of whom was hit. Ernesto, who had not been identified as a suspect in the gang-related shootings, and two other minors, who had been, were ultimately apprehended after exiting the car and attempting to escape.

Later that month, the Alameda County District Attorney's Office filed a wardship petition alleging that the juvenile court had jurisdiction over Ernesto, who was then 16 years old, under section 602, subdivision (a). Two years later, after several amendments, the operative petition was filed. It alleged that Ernesto committed the same four felonies against both officers, for a total of eight counts: attempted murder of a peace officer, attempted murder, assault with a firearm, and shooting at an occupied motor vehicle.[6] Numerous gang and firearm enhancements were also alleged.[7] Finally, the petition gave notice of 2015 and 2017 findings that Ernesto committed a

---

[6] These counts were alleged under Penal Code sections 187, subdivision (a), and 664, subdivision (e) (attempted murder of peace officer), 187, subdivision (a), and 664, subdivision (a) (attempted murder), 245, subdivision (a)(2) (assault with firearm), and 246 (shooting at occupied vehicle).

[7] Gang enhancements were alleged under Penal Code section 186.22, subdivision (b)(1) (as to the counts of attempted murder and assault with a firearm), (b)(4) (as to the counts of shooting at an occupied vehicle), and (b)(5) (as to the counts of attempted murder of a peace officer). Firearm enhancements were alleged under Penal Code sections 12022.5, subdivision (a) (personal use of a firearm, as to the counts of assault with a firearm), and 12022.53, subdivision (c) (personal and intentional discharge of a firearm, as to all four counts of attempted murder).

4

misdemeanor, and it sought a hearing on whether he should be transferred to criminal court.[8]

In October 2020, Ernesto admitted one count of assault with a firearm and the accompanying allegations that he personally used a firearm and committed the crime for the benefit of a gang. In accepting the plea, the juvenile court advised Ernesto that he faced a maximum penalty of 14 years, 8 months in a locked facility. The court then dismissed the remaining counts and enhancements, and the prosecution withdrew its motion to transfer Ernesto to criminal court.

A contested dispositional hearing was held over several days in late 2020, with the prosecution seeking commitment to DJJ and Ernesto seeking placement in a county facility, Camp Sweeney, and then in his aunt's care out-of-state to avoid gang influences. Ernesto had performed very well in juvenile hall, but evidence was introduced that he did not qualify for placement at Camp Sweeney because he was already 19 years old and was not planning to transition back to the local community.

On January 12, 2021, the juvenile court ordered Ernesto committed to DJJ and "fixe[d] the maximum period of confinement at three years." After noting it had "discretion to set a higher or lower confinement time," the court explained it "[chose] this as the maximum period of confinement based upon all the facts and circumstances and offenses of the minor, including the severity of the offense, the minor's previous performance on probation, relatively high probability of recidivism in the next year, and the minor's

---

[8] The 2015 finding was under Vehicle Code section 10851, subdivision (a) (joyriding), and the 2017 finding was under Penal Code section 626.10, subdivision (a) (possession of weapon on school grounds). Ernesto was on probation when he committed the instant offense.

performance while detained at juvenile hall for the current offense." The court then stated, "Credit for time served is 969 days."

The following day, the prosecutor informed the juvenile court and Ernesto's trial counsel by email that she had learned "DJJ rejects youth who have less than [one] year to serve." The prosecutor indicated that if Ernesto's 969 days of credits were applied against the three-year maximum custodial term the court had set, he would have only 126 days left to serve. The prosecutor also provided a brief she had filed in Ernesto's co-participant's case in which she suggested that the court lacked authority to order a "commitment that would essentially be only a 'paper commitment.' "

At a hearing on January 14, the juvenile court noted the prosecutor had "brought some new information" to light about the DJJ commitment and set the matter for January 21, giving Ernesto's counsel a week to respond. The court directed "the clerk not to prepare the commitment order until that hearing."

Before the January 21 hearing, the prosecutor emailed the juvenile court and Ernesto's counsel to inform them that under *A.R.*, *supra*, 24 Cal.App.5th 1076, "the [j]uvenile court may apply a youth's credit ONLY to their maximum exposure time pursuant to . . . [section] 726 and not to the DJJ maximum term of confinement set by the court pursuant to . . . [section] 731." The prosecutor asked the court to "supplement the record for . . . [Ernesto's] disposition to clarify how [it] intended the credits to be applied" and argued that the court should apply the precommitment credits only to the maximum exposure term, not to the maximum custodial term.

At the January 21 hearing, the juvenile court stated its understanding that DJJ "need[ed] clarification as to whether . . . [the precommitment credits applied] against the maximum time or . . . against the three years." The

6

court then indicated its "intention was . . . that [Ernesto] would do three years" in DJJ, not serve only 90 to 120 days there, as such a short time would not "allow [him] to materially benefit from [DJJ] services." After hearing argument from the parties, the court concluded that its January 12 dispositional order was "ambiguous as to where the credits should be applied" and that it had the authority to clarify the order. The court then "appl[ied] the [credits] towards the maximum term of confinement of 14 years and 8 months as previously stated."[9]

On January 25, 2021, the superior court filed Ernesto's commitment to DJJ, which specified that his "maximum period of imprisonment" (i.e., his maximum exposure term) was 14 years, 8 months, his "maximum period of confinement" (i.e., his maximum custodial term) under section 731 was three years, and he had 969 days of precommitment credits. Those credits were updated to 1,005 days on February 9. DJJ accepted Ernesto on February 25, and he filed a notice of appeal on March 2. He was transported from juvenile hall to DJJ on June 8.[10]

II.
DISCUSSION

A.    *The Law Governing Physical Confinement of Wards*

We begin with an overview of sections 726 and 731, which together govern the physical confinement of minors committed to DJJ. Section 726

---

[9] Although the juvenile court had not specified the maximum exposure term at the January 12 dispositional hearing, it advised Ernesto of that term before taking his plea.

[10] On February 17, 2022, nearly a year after this appeal was taken, Ernesto's appellate counsel filed a motion to expedite the appeal and the related habeas proceeding. We granted the motion, even though counsel had already substantially delayed the case by filing four omission letters, each of which required a record augmentation; obtaining two extensions of time to file the opening brief; and filing an opening brief of over 100 pages.

7

governs the confinement of any minor who "is removed from the physical custody of the minor's parent or guardian as the result of an order of wardship made pursuant to Section 602," and section 731 further governs the confinement of any such minor who is committed to DJJ.  (§§ 726, subd. (d)(1), 731, subd. (b).)  Both statutes limit how long in total a minor may be physically confined.  (*Ibid.*)

As this division has explained, "prior to 1976 the confinement of both adult and juvenile felons was subject to an indeterminate system 'which gave courts or administrative agencies broad discretion to set each individual term of confinement on the basis of various factors, including the circumstances of the offense and the offender's progress toward rehabilitation.' " (*In re A.G.* (2011) 193 Cal.App.4th 791, 799 (*A.G.*).)  In 1976, the Legislature enacted the determinate sentencing law for adults, under which "for any particular felony the [sentencing] court must select among one of three sentence terms." (*Ibid.*)  Although "the Legislature left unchanged the indeterminate system for juvenile offenders," it amended sections 726 and 731 to address *People v. Olivas* (1976) 17 Cal.3d 236, which held "that equal protection prohibits the confinement of a minor for a period of time longer than the sentence that would be imposed on an adult for an equivalent crime." (*A.G.*, at p. 800.)  Both statutes now "provide[d] for the first time that any juvenile court order for an offender's physical confinement . . . must expressly be limited in duration to the 'maximum term of imprisonment' . . . for an adult convicted of the same offense or offenses." (*In re Jovan B.* (1993) 6 Cal.4th 801, 818, italics omitted.)  This "maximum term of imprisonment" referred to "the longest of the triad of determinate sentences plus any proven enhancements." (*A.G.*, at p. 800.)

8

Two further statutory amendments are relevant here. First, in 2003, section 731 was amended to preserve "[t]he provision prohibiting the confinement of a minor for longer than the maximum term of imprisonment . . . , but the following sentence was added immediately following: 'A minor committed to . . . [DJJ] also may not be held in physical confinement for a period of time in excess of the maximum term of physical confinement set by the court based upon the facts and circumstances of the matter or matters which brought or continued the minor under the jurisdiction of the juvenile court, which may not exceed the maximum period of adult confinement as determined pursuant to this section.' " (*A.G.*, *supra*, 193 Cal.App.4th at pp. 800–801.) This language conferred on juvenile courts the " 'discretion to impose less than the adult maximum term of imprisonment when committing a minor to [DJJ].' "[11] (*In re Christian G.* (2007) 153 Cal.App.4th 708, 714.) Second, both sections 726 and 731 were recently amended to provide that a minor may not be held in physical confinement for longer than the *middle* term of imprisonment under the determinate sentencing law. (Stats. 2021, ch. 18, §§ 7–8; Stats. 2020, ch. 337, § 28.)

Thus, section 726 currently provides that if a minor is removed from a parent's physical custody, "the order shall specify that the minor may not be held in physical confinement for a period in excess of the middle term of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought or continued the minor under the jurisdiction of the

---

[11] This maximum custodial term " 'is not a determinate term, it is the ceiling on the amount of time that a minor may be confined in [DJJ] . . . . The [Board of Juvenile Hearings] retains the power . . . to determine the actual length of confinement at or below the ceiling set by the juvenile court' " subject to various " 'rules and regulations,' " including age limitations on confinement in DJJ. (*A.G.*, *supra*, 193 Cal.App.4th at p. 801; see § 1771.)

juvenile court." (§ 726, subd. (d)(1).) This period includes the midterm for a given offense plus enhancements, and in calculating it the juvenile court may "aggregate the period of physical confinement on multiple counts or multiple petitions, including previously sustained petitions adjudging the minor a ward within Section 602."[12] (§ 726, subd. (d)(2)–(3).) "Physical confinement" includes "placement in a juvenile hall . . . or in any institution operated by [DJJ]." (§ 726, subd. (d)(5).)

Section 731 currently provides that a minor committed to DJJ "shall not be confined in excess of the term of confinement set by the committing court. The court shall set a maximum term based upon the facts and circumstances of the matter or matters that brought or continued the ward under the jurisdiction of the court and as deemed appropriate to achieve rehabilitation. The court shall not commit a ward to [DJJ] for a period that exceeds the middle term of imprisonment that could be imposed upon an adult convicted of the same offense." (§ 731, subd. (b).)

B.     *A Minor's Precommitment Credits Must Be Applied Against the Maximum Custodial Term Under Section 731.*

With this background in mind, we turn to Ernesto's claim that the juvenile court was required to apply his precommitment credits against the

---

[12] The provisions of section 726 addressing what time may be added to an offense's midterm in calculating the maximum period a juvenile may be physically confined are part of the statute's definition of "maximum term of imprisonment." (§ 726, subd. (d)(1)–(2).) Although the definition purportedly applies to that phrase "[a]s used in [section 726] and in Section 731" (§ 726, subd. (d)(2)), that phrase no longer appears in section 726, subdivision (d)(1), or section 731 as a result of the recent amendments to refer to the "middle term of imprisonment" instead. Neither party raises the issue, so for purposes of this opinion we will assume this was a drafting error and that section 726's definition of "maximum term of imprisonment" actually defines the term "middle term of imprisonment" in both statutes.

10

maximum custodial term, not the maximum exposure term. This claim presents a question of statutory interpretation we review de novo, "seeking, as always, to ascertain the Legislature's intent so as to give effect to the law's purpose." (*In re Corrine W.* (2009) 45 Cal.4th 522, 529.)

In 1979, our state Supreme Court held that "[i]n order to carry out the mandate of section 726 . . . that a juvenile 'not be held in physical confinement for a period in excess of the maximum term of imprisonment which could be imposed upon an adult convicted' of the same offenses," a juvenile must receive precommitment credits for the time spent in custody before the dispositional order is entered. (*In re Eric J.* (1979) 25 Cal.3d 522, 536 (*Eric J.*); *In re Antwon R.* (2001) 87 Cal.App.4th 348, 352.) The *Eric J.* minor was committed to the California Youth Authority, DJJ's predecessor. (*Eric J.*, at p. 535.) He argued that he was entitled to precommitment credits under Penal Code section 2900.5 (section 2900.5), which provides for presentence custody credits in criminal proceedings. (*Eric J.*, at p. 535.) The Supreme Court found it unnecessary, however, to decide whether that statute applies directly to juveniles. (*Eric J.*, at pp. 535–536; *In re Randy J.* (1994) 22 Cal.App.4th 1497, 1503–1504.) Rather, adopting the reasoning of an earlier Court of Appeal decision, *Eric J.* concluded that precommitment confinement had to be credited to comply with section 726's requirement that a juvenile "not be held in physical confinement" for longer than the "maximum term of imprisonment" an adult could receive for the same offense. (*Eric J.*, at pp. 535–536, citing *In re Harm R.* (1979) 88 Cal.App.3d 438, 445.) In other words, *Eric J.* held that section 726's limit on a minor's

11

time in physical confinement applies to both precommitment and postcommitment confinement.[13]

At the time *Eric J.* was decided, section 731 echoed section 726 in providing that a minor committed to what is now DJJ "may not be held in physical confinement for a period of time in excess of the maximum period of imprisonment which could be imposed upon an adult" for the same offenses, but section 731 did not yet convey discretion on a juvenile court to set a maximum custodial term lower than the maximum exposure term. (Stats. 1978, ch. 380, § 165.) Thus, sections 726 and 731 used to impose the same limit on physical confinement: an adult's maximum term of imprisonment for the same offenses. But in amending section 731 to give courts discretion to set a lower maximum custodial term, the Legislature added language providing that " '[a] minor committed to the [DJJ] also may not be held in physical confinement for a period of time in excess of *the maximum term of physical confinement set by the court*' " when exercising that discretion. (*A.G., supra,* 193 Cal.App.4th at pp. 800–801, italics added.) In its current form section 731 provides that "[a] ward committed to [DJJ] shall not be confined in excess of the term of confinement set by the committing court." (§ 731,

_____

[13] Citing *Eric J., Antwon R.* explained that "[b]ecause an adult would be entitled to presentence custody credit under . . . section 2900.5, [section 726] has been interpreted to mean that an equivalent amount of time must be subtracted from a minor's maximum period of physical confinement." (*In re Antwon R., supra,* 87 Cal.App.4th at p. 352.) Relying on *Antwon R.,* Ernesto suggests that the reason precommitment credits must be applied against the maximum custodial term is because "[a]n adult's maximum middle term would be calculated after application of . . . section 2900.5 presentence credit." We disagree that *Eric J.*'s holding depended on section 2900.5 or that the "middle term of imprisonment" under section 726 means the middle term of the sentencing triad after precommitment credits are applied. Rather, *Eric J.*'s point was simply that section 726 imposes a ceiling on how long a juvenile can be physically confined in total, not just after commitment.

subd. (b).)  Thus, although section 726 still limits a minor's physical confinement based on what an adult's "term of imprisonment" would be, section 731 further limits a minor's physical confinement based on the "term of confinement set by the committing court," which is "a possibly lower ceiling set by the relevant 'facts and circumstances.' "  (*In re Julian R.* (2009) 47 Cal.4th 487, 499.)

Applying *Eric J.*'s logic to the current statutory scheme, we conclude that when a minor is committed to DJJ, section 731 requires the juvenile court to apply the minor's precommitment credits against the actual maximum custodial term the court imposes, not the theoretical maximum exposure term.  As we have said, *Eric J.* interpreted former section 726's directive that a minor " 'not be held in physical confinement' " for longer than a certain period to refer to both precommitment and postcommitment physical confinement.  (*Eric J.*, *supra*, 25 Cal.3d at p. 536.)  Likewise, we interpret section 731, subdivision (b)'s directive that a minor "not be confined" for longer than the maximum custodial term set by the court to refer to both precommitment and postcommitment physical confinement. Therefore, Ernesto's precommitment credits for time spent in juvenile hall should have been credited against the three-year maximum custodial term, since under section 731 Ernesto could not "be confined in excess of" three years total.

*A.R.* is the primary authority on which the People rely in arguing the juvenile court was not required to apply Ernesto's precommitment credits against the three-year maximum custodial term.  In *A.R.*, the juvenile court committed the minor to DJJ with a maximum custodial term of seven years, less than the 12-year maximum exposure term, but applied the minor's precommitment credits to the 12-year term.  (*A.R.*, *supra*, 24 Cal.App.5th at

13

pp. 1079–1080.) The Fourth District Court of Appeal concluded this was proper, holding that precommitment credits can be applied to the maximum exposure term instead of to the lower maximum custodial term. (*Id.* at pp. 1082–1083.) After explaining that section 726 governed the application of precommitment credits, the Fourth District concluded that the juvenile court's disposition satisfied that statute, since "the [m]inor's seven-year maximum term remained lower than the maximum that could have been imposed upon an adult." (*A.R.*, at pp. 1083–1084.)

But *A.R.* assumed that " '[a] juvenile's entitlement to predisposition custody credit is determined by [section] 726,' " without accounting for section 731's effect when the juvenile is committed to DJJ. (*A.R.*, *supra*, 24 Cal.App.5th at p. 1083, quoting *In re Emilio C.* (2004) 116 Cal.App.4th 1058, 1067.) To support the quoted proposition, *Emilio C.* cited *Eric J.*, but *Eric J.* does not establish that a minor's entitlement to precommitment credits is based *exclusively* on section 726. As explained above, when *Eric J.* was decided, section 731 repeated section 726's limit on physical confinement to an adult's maximum term of imprisonment for the same offense and did not permit a juvenile court to set a lower maximum custodial term. Thus, although section 731 also applied to the *Eric J.* minor, the Supreme Court had no reason to analyze the statute separately from section 726 because they said the same thing.

In contrast, when *A.R.* was decided, section 731 provided not only that "a ward committed to DJJ cannot be held longer than the 'maximum period of imprisonment' applicable to an adult" but also that " '[a] ward committed to [DJJ] *also* may not be held in physical confinement for a period of time in excess of the maximum term of physical confinement set by the court based upon the facts and circumstances.' " (*A.R.*, *supra*, 24 Cal.App.5th at p. 1083,

14

italics added, quoting former § 731, subd. (c).)  Thus, while *A.R.* correctly observed that the juvenile court's application of precommitment credits against the 12-year term did not violate section 726 (*A.R.*, at pp. 1083–1084), in our view the dispositional order in that case was inconsistent with former section 731 because it allowed the minor to be physically confined *at DJJ* for up to seven years without regard to the minor's precommitment physical confinement.

To comply with section 731's mandate that "[a] ward committed to [DJJ] . . . not be confined in excess of the term of confinement set by the committing court," the minor's precommitment credits must be applied against the "maximum term [the court sets] based upon the facts and circumstances" under that statute—i.e., the maximum custodial term. (§ 731, subd. (b).)  Once the juvenile court here set Ernesto's maximum custodial term at three years, it was required to apply his precommitment credits to that term.

Ernesto claims that the proper disposition is to order his immediate release because "with all of his credits for time served, [he] has served more than three years in confinement."  The Attorney General concedes that by the time Ernesto was transferred to DJJ, he had accrued 1,125 days of precommitment credits for the time spent in juvenile hall.  Since three years is equal to 1,095 days, Ernesto had already spent more than three years in physical confinement before he ever got to DJJ.

The record, however, leaves no doubt that the juvenile court intended for Ernesto to spend a significant period of time at DJJ to permit him to benefit from its services.  Once the prosecutor informed the court that DJJ would not accept Ernesto if he had less than a year to serve, as would be the case if his precommitment credits were applied against the three-year term,

15

the court purported to apply those credits against the maximum exposure term. Although this approach was inconsistent with the holding we announce in this decision, it appears that the court would have set a higher maximum custodial term under section 731 had it realized that the term had to include the time Ernesto had spent in juvenile hall. Accordingly, we conclude it is appropriate to remand the matter for the court to reconsider the three-year term in light of our holding that Ernesto's precommitment credits must be applied against it.

C.     *The Maximum Exposure Term Is Incorrect, and Ernesto's Precommitment Credits Must Be Updated.*

Ernesto also claims the maximum exposure term is incorrect and his precommitment credits must be updated to reflect the full time he spent in juvenile hall. Although we disagree with him that the juvenile court erred by including eight months based on his prior misdemeanors, we accept the Attorney General's concession that the maximum exposure term must be reduced to reflect the middle term for assault with a firearm.[14] We also agree with the parties that Ernesto's precommitment credits must be updated.

1.     Correction of the maximum exposure term

As mentioned above, the juvenile court specified that Ernesto's maximum exposure term was 14 years, 8 months. The parties agree that this term appears to be the sum of the upper term of four years for assault with a firearm (Pen. Code, § 245, subd. (a)(2)), ten years for the gang enhancement (*id.*, § 186.22, subd. (b)(1)(C)), and four months each for the two prior

_____

[14] Elsewhere in his briefing, Ernesto claims that a juvenile court need not specify a maximum exposure term if it sets a lower maximum custodial term under section 731. Assuming, without deciding, that this is correct, we still address the correct calculation of the maximum exposure term since the juvenile court must take that term into account on remand when setting the maximum custodial term.

16

misdemeanors (*id.*, § 626.10, subd. (a); Veh. Code, § 10851, subd. (a); see *Eric J., supra*, 25 Cal.3d at pp. 537–538), with the firearm enhancement stayed because it cannot be imposed in addition to the gang enhancement (see *People v. Rodriguez* (2009) 47 Cal.4th 501, 508).

When the dispositional order was entered in January 2021, section 731 had recently been amended to provide that a juvenile "court shall not commit a ward to [DJJ] for a period that exceeds the middle term of imprisonment that could be imposed upon an adult convicted of the same offense." (Former § 731, subd. (c); Stats. 2020, ch. 337, § 28.) Section 726, on the other hand, still provided that a minor removed from parental custody could "not be held in physical confinement for a period in excess of the *maximum term* of imprisonment which could be imposed on an adult convicted of the offense or offenses which brought or continued the minor under the jurisdiction of the juvenile court." (Former § 726, subd. (d)(1), italics added.) As of May 2021, section 726 was amended so that it also limits physical confinement to "the middle term of imprisonment" that could be imposed on an adult for the same offense. (§ 726, subd. (d)(1); Stats. 2021, ch. 18, § 7.)

Ernesto claims, and the Attorney General concedes, that the maximum exposure term is incorrect because it is based on the upper term of four years for assault with a firearm instead of the middle term of three years. (See Pen. Code, § 245, subd. (a)(2).) We agree that the maximum exposure term must be reduced by a year, whether because the amendment to section 731 was already in effect when the dispositional order was entered or because the amendment to section 726 was retroactive as an ameliorative change in the law under *In re Estrada* (1965) 63 Cal.2d 740.

Ernesto also claims that the juvenile court erred by aggregating his prior misdemeanor offenses in setting the maximum exposure term. Under

17

section 726, a juvenile court has discretion "to aggregate terms on the basis of previously sustained section 602 petitions in computing the maximum period of confinement." (*In re Adrian R.* (2000) 85 Cal.App.4th 448, 454; § 726, subd. (d)(1), (3).) According to Ernesto, because he was not removed from parental custody when the misdemeanor findings were originally sustained, "there was no custody time available to be aggregated with the current offenses."

The juvenile court's reliance on the prior misdemeanors in calculating Ernesto's maximum exposure time was proper under the plain terms of section 726. The statute provides that if the minor is removed from a parent's "physical custody . . . as the result of an order of wardship made pursuant to Section 602, the order shall specify that the minor may not be held in physical confinement" for longer than an adult would be for the same "offense or offenses which brought *or continued* the minor under the jurisdiction of the juvenile court." (§ 726, subd. (d)(1), italics added.) The statute also provides that "[i]f the court elects to aggregate the period of physical confinement on multiple counts or *multiple petitions, including previously sustained petitions adjudging the minor a ward within Section 602*," the maximum exposure term must be calculated under Penal Code section 1170.1, subdivision (a). (§ 726, subd. (d)(3), italics added.) Thus, section 726 clearly contemplates that the court may include time for offenses the minor was previously found to have committed, so long as the petitions alleging those offenses have not been dismissed. (See *In re Bryant R.* (2003) 112 Cal.App.4th 1230, 1237–1238; *In re Dana G.* (1983) 139 Cal.App.3d 678, 680.) Ernesto is correct that the court did not set a maximum exposure term when it originally sustained the previous petitions, as he was not removed from a parent's custody either time. But nothing in

18

section 726 prevented the court from thereafter—when entering the order that *did* remove him from parental custody—including time for the misdemeanors in the maximum exposure term.

### 2. Modification of the precommitment credits

When the dispositional order was entered on January 12, 2021, Ernesto had accrued 969 days of precommitment credits for the time spent in juvenile hall since his arrest. The juvenile court updated his credits to 1,005 days as of February 9, but he was not transported to DJJ until June 8. The parties agree he was entitled to credits for all the days he spent in physical confinement before being transported to DJJ, for a total of 1,125 days. (See *In re J.M.* (2009) 170 Cal.App.4th 1253, 1256 [precommitment credits include any time served in secure facility before actual placement].) Thus, we modify the judgment to reflect the accurate number of credits.

### D. *The Juvenile Court Did Not Err Under Section 602.3.*

Finally, Ernesto claims the juvenile court erred by concluding that section 602.3, which governs the placement of minors who personally use firearms during violent felonies, required it "to impose further custodial confinement." (Boldface and capitalization omitted.) He also claims that even if further confinement was mandated, the court abused its discretion by committing him to DJJ instead of juvenile hall. We are not persuaded on either count.

### 1. Additional facts

After entering his plea, Ernesto filed a brief requesting placement in Camp Sweeney and then in his aunt's care out-of-state, as his mother still "live[d] in the middle of gang territory" and returning to her home would not help him stay away from negative influences. The brief noted Ernesto's many successes in juvenile hall, including participation in several programs,

19

excellent behavior, and earning of a high school diploma, and explained how the proposed placement would permit him to continue this positive trajectory. The brief also argued against commitment to DJJ, focusing on its " 'culture of physical violence and gang conflict' " and the danger of contracting COVID-19.

The probation department's dispositional report, in contrast, concluded that DJJ "appear[ed] to be the most appropriate recommendation."  The report noted that Ernesto "was deemed not suitable for Camp Sweeney" based on his age and other factors and that he "was deemed ineligible for out-of-home placement due to his age and the fact that he has already earned a high school diploma."  It was also reported that Ernesto scored a 19 on the Youth Level of Service/Case Management Inventory (YLS), "an actuarial measure of risk for recidivism," which placed him "in the High Category for re-offending within the next year."  His "highest-ranking [c]riminogenic risk factors [were] Offenses/Dispositions, Family/Parenting, and Leisure/Recreation." (Emphasis omitted.)

The report continued by observing that "Ernesto ha[d] shown [he was] amenable to services when in a controlled locked environment," and "DJJ offer[ed] a range of rehabilitative services" that would permit him to "achieve rehabilitation prior to the expiration of the juvenile court's jurisdiction."  In addition, Ernesto, who had expressed that his "ultimate goal [was] to become a firefighter," would have the opportunity to participate in DJJ's conservation camp.  The conservation camp could benefit him by not only "teaching him firefighting" but also providing him with "Gang Awareness programming."

In line with the probation department's recommendation, the prosecution filed a memorandum arguing that Ernesto should be committed to DJJ.  The memorandum explained that he had been deemed unsuitable for

20

Camp Sweeney, and a probation officer had determined that there were "no other less restrictive placements that would be suitable or effective for [him] due to his age." The memorandum also noted a defense psychologist's opinion that Ernesto would " 'likely benefit from placement in a structured facility that provides mental health treatment, rehabilitation, academics[,] and vocational opportunities.' " Finally, the memorandum expounded upon the available opportunities at DJJ, including Counterpoint, the gang intervention program; a journaling program that would "complement [his] interest[] in writing"; the conservation camp, which if successfully completed could lead to a firefighting job; and other vocational and educational programs.

The prosecution's memorandum also observed that because of his offense Ernesto had to be placed "in a juvenile hall, ranch, camp, or with [DJJ]" under section 602.3, subdivision (a). Ernesto then filed a brief arguing that section 602.3 did not apply to him because he did not commit a qualifying offense. He also argued that even if the statute did apply, under *In re F.D.* (2012) 207 Cal.App.4th 886 (*F.D.*) the juvenile court had discretion to commit him to juvenile hall for a further term or deem the statute satisfied based on his precommitment credits.

The juvenile court concluded that section 602.3 applied to Ernesto because he "admitted to using a firearm during the commission of a violent felony as described in [Penal Code section] 667.5[, subdivision (c)]," and the statute had not been "nullified" by recent juvenile justice reform. The court also stated the statute required Ernesto to "be placed at juvenile hall, ranch, camp, or . . . [DJJ]." The court found that "Ernesto will benefit from a highly[]structured, secured environment," noting that "despite over two years of juvenile hall programming, [his] YLS score remains relatively high at a 19." And the court found that he would benefit "from the programming at

21

[DJJ]" in particular, observing, "Ernesto can further his goals of becoming a firefighter at DJJ's Pine Conservation Camp. He will also benefit from such programs as formalized substance abuse counseling, victim awareness counseling, mental health counseling, and the Counterpoint program."

      2.      Even if the juvenile court misunderstood its discretion under section 602.3, directing it to reconsider whether to impose additional physical confinement would be futile.

Section 602.3, subdivision (a), provides, "Notwithstanding any other law and pursuant to the provisions of this section, the juvenile court shall commit any minor adjudicated to be a ward of the court for the personal use of a firearm in the commission of a violent felony, as defined in subdivision (c) of Section 667.5 of the Penal Code, to placement in a juvenile hall, ranch, camp, or with [DJJ]." This provision's "apparent purpose" is "to limit judicial discretion in firearm use cases prosecuted in juvenile courts." (*People v. Thomas* (2005) 35 Cal.4th 635, 643.) Although Ernesto argued otherwise below, it is uncontested on appeal that he committed a qualifying offense under section 602.3. (See Pen. Code, § 667.5, subd. (c)(8) [violent felonies include "any felony in which the defendant uses a firearm which use has been charged and proved as provided in . . . [Penal Code] Section 12022.5"].)

Ernesto claims the juvenile court misunderstood the scope of its discretion because it incorrectly believed that imposing a "time-served or minimal term[]" would not satisfy section 602.3. He relies on *F.D.*, in which the Fifth District Court of Appeal interpreted an analogous provision, former section 707, subdivision (d)(5). (*F.D.*, *supra*, 207 Cal.App.4th at p. 889.)

Section 707, subdivision (d)(5), which was later repealed by Proposition 57, provided that if a prosecutor elected to file a section 602 petition instead of criminal charges against a minor and the minor was adjudged a ward, the minor had to "be committed to placement in a juvenile

22

hall, ranch camp, forestry camp, boot camp, or secure juvenile home pursuant to Section 730, or in any institution operated by [DJJ]." (Former § 707, subd. (d)(5); Voter Information Guide, Gen. Elec. (Nov. 8, 2016) text of Prop. 57, § 4.2, p. 145.) In *F.D.*, the juvenile court imposed probation and ordered the minor to serve 30 days in juvenile hall with credit for 30 days served. (*F.D.*, *supra*, 207 Cal.App.4th at pp. 888–889.) *F.D.* held that although section 707, subdivision (d)(5), "appear[ed] on its face to require confinement as part of the disposition" for a minor who could have been charged in criminal court, it did not have to decide whether "probation alone [was] an unauthorized disposition." (*F.D.*, at pp. 889–890.) Instead, *F.D.* concluded that a "time-served disposition[]" was sufficient, rejecting the People's position that a minor had to serve time in custody after disposition to satisfy the statute. (*F.D.*, at pp. 890–891.)

We need not decide whether *F.D.*'s reasoning applies to section 602.3 and the juvenile court would have been authorized to impose on Ernesto the time he already served in juvenile hall. "Generally, when the record shows that the trial court proceeded with sentencing on the erroneous assumption it lacked discretion, remand is necessary so that the trial court may have the opportunity to exercise its sentencing discretion at a new sentencing hearing." (*People v. Brown* (2007) 147 Cal.App.4th 1213, 1228; see *In re Sean W.* (2005) 127 Cal.App.4th 1177, 1181–1182.) If, however, " ' "the record shows that the trial court would not have exercised its discretion even if it believed it could do so, then remand would be an idle act and is not required." ' " (*People v. McDaniels* (2018) 22 Cal.App.5th 420, 425.) Here, the juvenile court made it abundantly clear in rejecting Ernesto's section 602.3 arguments, as well as in making other comments at the dispositional hearing, that it found it was in Ernesto's best interest to be committed to

23

DJJ. Accordingly, even if the court misunderstood the scope of its discretion under section 602.3, we need not direct it to reconsider whether to impose additional physical confinement.

> 3. The juvenile court did not abuse its discretion by committing Ernesto to DJJ instead of juvenile hall.

Ernesto also claims that even assuming section 602.3 required additional physical confinement, the juvenile court abused its discretion by committing him to DJJ instead of having him remain in juvenile hall. We are not persuaded.

A placement decision is reviewed for an abuse of discretion, and the factual findings supporting that decision are reviewed for substantial evidence. (*In re Carlos J.* (2018) 22 Cal.App.5th 1, 5.) In choosing a placement, the juvenile court must "take into account" several factors, including "[t]hat the setting is the least restrictive or most family-like environment that is appropriate for the child and available" and "[t]hat the setting is the environment best suited to meet the child's special needs and best interest." (Cal. Rules of Court, rule 5.790(h)(3)(B), (D); see *Carlos J.*, at p. 6.) To sustain a minor's commitment to DJJ, there must be substantial evidence " 'supporting a determination that less restrictive alternatives are ineffective or inappropriate' " and " 'demonstrating . . . a probable benefit to the minor by a [DJJ] commitment.' " (*Carlos J.*, at p. 6; *In re Teofilio A.* (1989) 210 Cal.App.3d 571, 576.)

Ernesto does not challenge the evidence that DJJ would benefit him, instead arguing "there was no substantial evidence that allowing [him] to remain in juvenile hall 'would be ineffective or inappropriate.' " He observes that "[i]t was undisputed that [he] had stellar performance in juvenile hall and that he had substantially matured and made great gains in his education, attitude, and mental health status." In light of this success, he

24

disputes that his high YLS score supported a DJJ commitment, noting that the score was due to "static factors," like his previous offenses and family history, "that would not change regardless of his placement." He also argues that the "leisure/recreation factor" was outside his ability to change, as it is based on the availability of " 'organized activities' " and he "made excellent use of his time" while in juvenile hall.

Ernesto's focus on his YLS score is misplaced. Even if we put aside the fact that he describes the YLS factors based on information outside the record, that score constituted substantial evidence that he had a high risk of reoffense, regardless of how much personal control he had over the factors on which he scored highest. Accordingly, the juvenile court could reasonably rely on the score to conclude that a more restrictive placement was warranted. And although Ernesto had done well at juvenile hall, there were opportunities particular to DJJ that promised to benefit him even more. For example, the conservation camp was in close alignment with his personal goals, and it offered experience and training in a profession that could help him transition to a productive life in the community. In addition, DJJ offered gang programming that was not available at juvenile hall, which was especially important since it was generally agreed that Ernesto remained vulnerable to gang involvement. In short, there was substantial evidence to support the conclusion that DJJ was the most appropriate available placement for him.

## III.
### DISPOSITION

The ruling that Ernesto's precommitment credits apply only to the maximum exposure term under section 726 is reversed. The dispositional order is modified to reflect that Ernesto's precommitment credits total 1,125 days, and the maximum exposure term under section 726 and the

maximum custodial term under section 731 are vacated. The matter is remanded to the juvenile court with directions to set a maximum custodial term consistent with this decision and apply Ernesto's precommitment credits against that term. The court shall prepare an amended commitment order reflecting the changes to the dispositional order and forward a certified copy of the amended commitment order to DJJ. The judgment is otherwise affirmed as modified.

_____

Humes, P.J.


WE CONCUR:


_____

Margulies, J.


_____

Banke, J.


*In re Ernesto L.* A162151

Trial Court:

Superior Court of the County of Alameda

Trial Judge:

Hon. Scott Jackson

Counsel for Defendant and Appellant:

Amanda K. Roze, under appointment by the Court of Appeal

Counsel for Plaintiff and Respondent:

Rob Bonta, Attorney General

Lance E. Winters, Chief Assistant Attorney General

Jeffrey M. Laurence, Senior Assistant Attorney General

Donna M. Provenzano, Supervising Deputy Attorney General

Amit Arun Kurlekar, Deputy Attorney General

*In re Ernesto L.* A162151