[No. A107500. First Dist., Div. Two. Mar. 28, 2005.]

In re SEAN W., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
SEAN W., Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part I.

## Counsel

Eleanor M. Kraft, under appointment by the Court of Appeal, for Defendant and Appellant.

Susan L. Burrell for Youth Law Center as Amicus Curiae on behalf of Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Asstistant Attorney General, Gerald A. Engler, Assistant Attorney General, Martin S. Kaye and Michael E. Banister, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**KLINE, P. J.**—Sean W. (appellant) appeals after the juvenile court sustained two allegations of child sexual abuse in a juvenile wardship petition (Welf. & Inst. Code, § 602)[1] and committed him to the California Youth Authority (CYA). On appeal, he contends the juvenile court (1) abused its discretion when it committed him to CYA for placement in the sexual offender program, and (2) failed to exercise its statutory discretion in setting his maximum term of physical confinement at CYA.[2] Because we conclude the juvenile court failed to exercise its statutory discretion to determine appellant's maximum term of confinement, pursuant to recently amended section 731, subdivision (b), we shall remand the matter to the juvenile court so that it can exercise that discretion. We shall otherwise affirm the order.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] The Youth Law Center has filed an amicus curiae brief in support of appellant concerning this second issue.

## *PROCEDURAL BACKGROUND*

On June 23, 2004, an amended juvenile wardship petition was filed, pursuant to section 602, alleging that appellant had committed continuous sexual abuse of a minor under the age of 14 (Pen. Code, § 288.5—counts one and three), and had committed a lewd act on a child under the age of 14 (Pen. Code, § 288, subd. (a)—counts two and four).

On July 20, 2004, after the parties agreed to amendments to the counts, appellant admitted two violations, specifically count two: commission of a lewd act on a child under the age of 14 (Pen. Code, § 288, subd. (a)), and (new) count five: sexual penetration with a foreign object. (Pen. Code, § 289, subd. (h).) The court then dismissed the other counts.

At the August 4, 2004 dispositional hearing, the court committed appellant to CYA for a maximum period of confinement of eight years eight months.

Appellant filed a timely notice of appeal on August 6, 2004.

## *FACTUAL BACKGROUND*[3]

On May 1, 2004, S.B.'s parents went out to dinner with appellant's father and stepmother, leaving eight-year-old S.B. and her sibling in appellant's care as a babysitter. Appellant, who was 17 years old, repeatedly asked S.B. whether he could see her private parts. Then, while playing hide and seek, he put his hand underneath her shorts, and rubbed her "private" over her underwear. When she squeezed her legs together, appellant removed his hand and told her she had better not tell anyone. Appellant was arrested the next day and taken to juvenile hall.

On May 6, 2004, appellant's six-year-old half sister, E.W., told her mother (appellant's stepmother) that appellant had molested her too. She told her mother, and later told investigators, that appellant had touched her "privates" on the same night he touched S.B. He also had molested her on numerous other occasions; specifically, he had rubbed her vagina under her clothes, inserted his finger in her vagina and moved it around on at least four occasions, licked her breasts and belly, put his penis in her vagina once, and masturbated and ejaculated in front of her.

During a visit at juvenile hall, appellant admitted to his stepmother that he had molested E.W. In a recorded "pretext" telephone conversation with his

---

[3] This statement of facts is taken from the probation report.

father, appellant acknowledged masturbating in front of E.W. once and licking her once, but he denied putting his "private" against her.

## DISCUSSION

### I. CYA Commitment*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### II. Section 731, Subdivision (b)

Appellant contends the juvenile court failed to exercise its statutory discretion in setting his maximum term of physical confinement, pursuant to recently amended section 731, subdivision (b).

Section 731, subdivision (b), provides in relevant part: "A minor committed to the Department of the Youth Authority may not be held in physical confinement for a period of time in excess of the maximum period of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought or continued the minor under the jurisdiction of the juvenile court. *A minor committed to the Department of the Youth Authority also may not be held in physical confinement for a period of time in excess of the maximum term of physical confinement set by the court based upon the facts and circumstances of the matter or matters which brought or continued the minor under the jurisdiction of the juvenile court, which may not exceed the maximum period of adult confinement as determined pursuant to this section.*" (Italics added.) The Legislature amended section 731, subdivision (b), to add the above italicized language to the provision, with an operative date of January 1, 2004. (See Stats. 2003, ch. 4, § 1, eff. Apr. 8, 2003, operative Jan. 1, 2004.)

### A.

As a preliminary matter, respondent asserts that appellant has waived this issue by failing to raise it in the juvenile court. (See *People v. Scott* (1994) 9 Cal.4th 331, 353–354 [36 Cal.Rptr.2d 627, 885 P.2d 1040].) Appellant, however, does not contend that the court imposed a commitment "in a procedurally or factually flawed manner" (*id.* at p. 354), but instead makes the distinct argument that the court completely failed to exercise its discretion, under section 731, subdivision (b), in setting appellant's maximum term of confinement. " '[A] ruling otherwise within the trial court's power will nonetheless be set aside where it appears from the record that in issuing

---

*See footnote, *ante*, page 1177.

the ruling the court failed to exercise the discretion vested in it by law. [Citations.]' [Citation.] 'Failure to exercise a discretion conferred and compelled by law constitutes a denial of a fair hearing and a deprivation of fundamental procedural rights, and thus requires reversal. [Citations.]' [Citation.]" (*People v. Downey* (2000) 82 Cal.App.4th 899, 912 [98 Cal.Rptr.2d 627].)

The record supports appellant's claim that the juvenile court did not believe it had any discretion with respect to the maximum term of confinement when it committed appellant to CYA. Amended section 731, subdivision (b), became operative on January 1, 2004. The court twice mentioned appellant's maximum term of confinement during the proceedings. First, on July 20, 2004, after appellant admitted to the allegations of the amended petition and the court found a knowing waiver of rights, the court said, "I'm sorry, but at this time I do need to advise the minor of the maximum term." The prosecutor then said, "It's eight years, eight months." The court then said, "Do you understand that, sir?" Appellant responded in the affirmative. Second, at the August 4, 2004 dispositional hearing, the court stated, "For the reasons I have stated on the record, the minor's committed to the Department of California Youth Authority for a term prescribed by law, for a period not exceeding eight years—and what was it?—" The clerk answered, "Eight months." The court then said, "—eight years and eight months." The court, counsel, and the probation department indicated no awareness of court discretion in setting the maximum term of confinement. The issue is not waived.

## B.

" '[I]n construing a statute, a court [must] ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.] In determining that intent, we first examine the words of the respective statutes: 'If there is no ambiguity in the language of the statute, "then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs." [Citation.] "Where the statute is clear, courts will not 'interpret away clear language in favor of an ambiguity that does not exist.' [Citation.]" ' [Citation.] If, however, the terms of a statute provide no definitive answer, then courts may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history. [Citation.] 'We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' [Citation.]" (*People v. Coronado* (1995) 12 Cal.4th 145, 151 [48 Cal.Rptr.2d 77, 906 P.2d 1232].)

Furthermore, we must "harmonize competing statutes to effectuate the legislative policy. We ' "should seek to consider the statutes not as antagonistic laws but as parts of the whole system which must be harmonized and effect given to every section [citations]. Accordingly, statutes which are in *pari materia* should be read together and harmonized if possible." ' [Citations.]" (*Johnston v. Sonoma County Agricultural Preservation & Open Space Dist.* (2002) 100 Cal.App.4th 973, 986 [123 Cal.Rptr.2d 226].)

**1.**

In the present case, respondent argues that the added language of section 731, subdivision (b), is unambiguous in that it is merely a clarification of existing law and a directive to CYA that a ward cannot be physically confined beyond the maximum term set by the juvenile court. Respondent further avers that the language in section 731, subdivision (b), providing for the court to set the maximum term of confinement "based upon the facts and circumstances" of the case, merely articulates the understanding that the court has discretion under section 726, subdivision (c), in deciding whether to aggregate periods of physical confinement on multiple counts or petitions adjudging a minor to be a ward.

We find this argument unpersuasive in that such an interpretation would render the amendment unnecessary. First, since the previous version of the statute already stated that the minor could not be held in confinement for a longer period than the maximum term that could be imposed on an adult convicted of the same offense, the maximum term set by the juvenile court obviously *was* the maximum adult term, and no amendment was needed to clarify the statute's meaning. Second, respondent's interpretation would not permit court discretion—except in the very limited area of aggregating the period of confinement on multiple counts or petitions, which was already permitted under section 726, subdivision (c)—and would render superfluous the added language reflecting the court's ability to set a maximum term of confinement based on the facts and circumstances of the case. (See, e.g., *Garcia v. McCutchen* (1997) 16 Cal.4th 469, 476 [66 Cal.Rptr.2d 319, 940 P.2d 906] [discussing "rule of statutory interpretation that requires us, if possible, to give effect and significance to every word and phrase of a statute"].)

Instead, we find that the added language of section 731, subdivision (b), unambiguously provides that the juvenile court has discretion to set a maximum term of physical confinement, based on the facts and circumstances of the case, so long as that term does not exceed the maximum period that could be imposed on an adult convicted of the same offense. Thus, this plain meaning of the statute's language governs. (See *People v. Coronado, supra,* 12 Cal.4th at p. 151.)

**2.**

Even were there any question about the Legislature's intent, the legislative history of Senate Bill No. 459—the legislation that, inter alia, amended subdivision (b) of section 731—clearly reflects an intent to expand the juvenile court's discretion in CYA commitments.

Senate Bill No. 459 was introduced on February 20, 2003, and its various objectives, according to its author, Senator John Burton, were to consolidate " 'the work of the YOPB [Youthful Offender Parole Board] under the CYA in a manner that makes both fiscal and policy sense. Up until 1980, the YOPB was part of CYA. Returning to this general framework [with the YOPB converted into the Youth Authority Board] will greatly improve the link between YOPB members and the CYA, which will result in a more effective and efficient CYA. This bill also contains important checks and balances that will enhance the relationship between CYA and the counties, which will improve CYA correctional services. [¶] In addition, this bill ensures that the YOPB is adequately funded to perform its duties mandated by law for the remainder of the 2002–03 budget year.' " (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 459 (2003–2004 Reg. Sess.) as amended Mar. 17, 2003, p. 4.) The Legislative Counsel's Digest explained that "[t]he bill would also provide that a minor may not be held in physical confinement for a period of time in excess of the maximum term of physical confinement set by the court, as specified." (Legis. Counsel's Dig., Sen. Bill No. 459 (2003–2004 Reg. Sess.); see Stats. 2003, ch. 4, Summary Dig.)

Following the introduction of Senate Bill No. 459, a series of legislative committee analyses clearly informed legislators that the bill was intended to change juvenile court dispositional powers with respect to confinement time for CYA commitments.

For example, in the initial analysis prepared for the March 13, 2003 hearing of the Senate Committee on Public Safety, the list of "key issues" in Senate Bill No. 459 included the question: "Should juvenile courts be authorized to set a maximum term of physical confinement in the CYA based upon the facts and circumstances of the matter or matters which brought or continued the minor under the jurisdiction of the juvenile court?" (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 459 (2003–2004 Reg. Sess.) as amended Mar. 12, 2003, p. B.)[7] The analysis also informed legislators that Senate Bill No. 459 "would authorize the court to additionally set maximum

---

[7] Although Senate Bill No. 459 was amended four times (on Mar. 10, 2003, Mar. 12, 2003, Mar. 17, 2003, and Apr. 3, 2003), the language proposed for section 731 remained unchanged. (Sen. Bill No. 459 (2003–2004 Reg. Sess.), approved by Governor, Apr. 7, 2003, Complete Bill Hist., p. 1.)

terms of physical confinement in the CYA based upon the facts and circumstances of the matter or matters which brought or continued the minor under the jurisdiction of the juvenile court. *This new provision would provide for court consideration of factors about the offense and the offender's history which would be comparable to those employed now for the triad sentencing of adults, and have those considerations reflected in the CYA confinement term ordered by the court.*" (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 459 (2003–2004 Reg. Sess.) as amended Mar. 12, 2003, pp. I–J, italics added; see also Assem. Com. on Public Safety, Analysis of Sen. Bill No. 459 (2003–2004 Reg. Sess.) as amended Mar. 17, 2003, p. 6 [containing identical language describing court discretion under Senate Bill No. 459].)

The Senate Rules Committee's floor analysis for Senate Bill No. 459, as amended on March 17, 2003, stated that the bill, inter alia, "a]uthorizes the court to set a maximum term of confinement that is not necessarily the adult term maximum." (Sen. Rules Com., Off. of Sen. Floor Analyses, 1st reading analysis of Sen. Bill No. 459 (2003–2004 Reg. Sess.) as amended Mar. 17, 2003, p. 3.) The Senate Rules Committee's second floor analysis for the bill, as amended on April 3, 2003, repeated this statement and, further, included a statement from the League of Women Voters, which stated that "they support the proposal to involve the county juvenile justice systems in determining the treatment programs and length of stay of the young people they commit to CYA. The juvenile court judges and probation officers know the wards and understand what rehabilitation efforts are needed before the young offenders can return to their communities." (Sen. Rules Com., Off. of Sen. Floor Analyses, 2d reading analysis of Sen. Bill No. 459 (2003–2004 Reg. Sess.) as amended Apr. 3, 2003, pp. 4, 9.)

After this period of considerable deliberation, Senate Bill No. 459 passed both houses unanimously on April 7, 2003; the Governor signed the bill into law that same day. (Sen. Bill No. 459 (2003–2004 Reg. Sess.), approved by Governor Apr. 7, 2003, Complete Bill Hist., p. 1.)

In conclusion, the straightforward language of amended section 731, subdivision (b), as well as its legislative history, demonstrate that the Legislature intended to give the juvenile court discretion to set a maximum confinement time that is less than the adult maximum term when committing a minor to CYA.

### 3.

Respondent nonetheless argues that (1) the failure to amend section 726 negates the amendment to section 731, subdivision (b); (2) recognition of the change to section 731 would require that juvenile court law's indeterminate

disposition scheme be dismantled; and (3) the amendment would create equal protection problems. We disagree with each of these points, as we shall explain.

**a.**

First, section 731 does not conflict with section 726. Section 726, subdivision (c), provides in relevant part: "If the minor is removed from the physical custody of his or her parent or guardian as the result of an order of wardship made pursuant to Section 602, the order shall specify that the minor may not be held in physical confinement for a period in excess of the maximum term of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought or continued the minor under the jurisdiction of the juvenile court."[8]

■ We find no conflict between amended section 731, subdivision (b), regarding CYA commitments, and the general dispositional scheme set forth in section 726. Section 731 does not permit the court to impose a term in excess of the maximum adult term. Rather, Senate Bill No. 459, which was expressly intended to give juvenile courts more dispositional power in CYA cases, in the words of amicus curiae, "simply carves out an exception in the case of [CYA] commitments based on the Legislature's desire to provide a mechanism to limit confinement time based on the 'facts and circumstances of the matter.' The two sections are in perfect harmony." (See *Johnston v. Sonoma County Agricultural Preservation & Open Space Dist.*, *supra*, 100 Cal.App.4th at p. 986.)

---

[8] Subdivision (c) of section 726 further provides: "As used in this section and in Section 731, 'maximum term of imprisonment' means the longest of the three time periods set forth in paragraph (2) of subdivision (a) of Section 1170 of the Penal Code, but without the need to follow the provisions of subdivision (b) of Section 1170 of the Penal Code or to consider time for good behavior or participation pursuant to Sections 2930, 2931, and 2932 of the Penal Code, plus enhancements which must be proven if pled.

"If the court elects to aggregate the period of physical confinement on multiple counts or multiple petitions, including previously sustained petitions adjudging the minor a ward within Section 602, the 'maximum term of imprisonment' shall be the aggregate term of imprisonment specified in subdivision (a) of Section 1170.1 of the Penal Code, which includes any additional term imposed pursuant to Section 667, 667.5, 667.6, or 12022.1 of the Penal Code, and Section 11370.2 of the Health and Safety Code.

"If the charged offense is a misdemeanor or a felony not included within the scope of Section 1170 of the Penal Code, the 'maximum term of imprisonment' is the longest term of imprisonment prescribed by law.

" 'Physical confinement' means placement in a juvenile hall, ranch, camp, forestry camp or secure juvenile home pursuant to Section 730, or in any institution operated by the Youth Authority.

"This section does not limit the power of the court to retain jurisdiction over a minor and to make appropriate orders pursuant to Section 727 for the period permitted by Section 607."

Respondent notes that, after the passage of Senate Bill No. 459, section 726 was reenacted with only irrelevant amendments. (Stats. 2003, ch. 862, § 12, eff. Oct. 13, 2003.) Thus, according to respondent, "even if the amendment to section 731 can be said to have repealed section 726's maximum term rule, . . . the later reenactment of section 726 would supersede that repeal. [Citations.]" Appellant has not argued and we have not found that section 731 repealed section 726. Instead, we have found that sections 731 and 726 are not in conflict.[9]

In addition, even were there arguably a conflict between the two provisions, respondent's assertion that the reenactment of section 726 essentially amended section 731 by implication is unpersuasive. "An implied amendment is an act that creates an addition, omission, modification or substitution and changes the scope or effect of an existing statute." (*McLaughlin v. State Bd. of Education* (1999) 75 Cal.App.4th 196, 219 [89 Cal.Rptr.2d 295].) Amendments by implication are disfavored and should "be employed frugally, and only where the later-enacted statute creates such a conflict with existing law that there is no rational basis for harmonizing the two statutes, such as where they are ' "irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation. . . ." ' [Citation.]" (*Id.* at pp. 219, 222–223.) As we have already explained, sections 731 and section 726 are not so irreconcilable that they cannot be harmonized. Thus, respondent's claim that section 726's reenactment amended section 731 by implication plainly is without merit.

Finally, we note that " ' "[i]t is the general rule that where the general statute standing alone would include the same matter as the special act, and thus conflict with it, the special act will be considered as an exception to the general statute whether it was passed before or after such general enactment. . . ." ' [Citations.]" (*McLaughlin v. State Bd. of Education, supra*, 75 Cal.App.4th at pp. 224–225.) In the present case, even assuming there were a conflict between sections 731 and 726, the specific language of section 731, subdivision (b), regarding juvenile court discretion in setting the maximum term of confinement in CYA cases, would necessarily control over the broad language of section 726, subdivision (c), regarding the maximum term of confinement in juvenile wardship cases generally.

---

[9] The legislative history of Assembly Bill No. 490, the bill that, inter alia, amended section 726, reflects that the legislation was intended to "correct some of the educational problems foster, homeless, and incarcerated youth face" (Assem. Com. on Education, Analysis of Assem. Bill No. 490 (2003–2004 Reg. Sess.) as amended Apr. 10, 2003, p. 4), and the legislation made "numerous changes to the law related to the education of foster youth in the areas of educational placement, coursework credit, records transfer, and educational programs offered to foster youth." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 490 (2003–2004 Reg. Sess.) as amended Aug. 19, 2003, pp. 1–2.) The legislative history reveals no intent to alter or invalidate section 731, subdivision (b).

### b.

Second, the amendment to section 731, subdivision (b), has not inserted the adult determinate sentencing scheme into the juvenile indeterminate disposition scheme. Contrary to respondent's assertion, the new statutory language does *not* authorize the juvenile court to determine the minor's release date and actual term of confinement. Instead, Senate Bill No. 459 created the Youth Authority Board, which decides the actual length of a minor's confinement at CYA. (Stats. 2003, ch. 4, §§ 16, 20, eff. Apr. 8, 2003, operative Jan. 1, 2004, amending §§ 1719, 1723.) While amended section 731, subdivision (b), does allow the court to set an earlier outside limit to the indeterminate period of confinement, based on the facts and circumstances of the case, the basic system for determining a minor's actual length of stay, based on the administrative board's decision, remains unchanged.

Nor does the added language of section 731, subdivision (b), "inject an aspect of retributive punishment" into the juvenile indeterminate disposition scheme, as respondent argues it does. As we have explained, the amendment simply allows the court to set a shorter maximum term in CYA cases; it does not otherwise alter the administrative system for assessment and determination of the timing of successful rehabilitation of the minor, and does not alter the purposes and goals of juvenile law.

### c.

Third, we do not believe that allowing the court to set the maximum term of confinement in CYA commitments raises equal protection concerns. (See U.S. Const., 14th Amend.; Cal. Const., art. IV, § 16.) Respondent argues that the amendment to section 731, subdivision (b), would, in the absence of clear guidelines, permit juvenile courts throughout California to arbitrarily set different maximum terms of confinement for similarly situated minors. On the contrary, the amendment permits the court to tailor the maximum term to the "facts and circumstances" of the particular case before it. (See § 731, subd. (b).) If anything, there is now less likelihood of arbitrary treatment in CYA cases than there was before the amendment.[10]

Because, in this case, the juvenile court failed to exercise its discretion to set a maximum term of physical confinement based on the facts and

---

[10] Respondent cites *Manduley v. Superior Court* (2002) 27 Cal.4th 537 [117 Cal.Rptr.2d 168, 41 P.3d 3], in support of its argument that the juvenile court's exercise of discretion pursuant to amended section 731, subdivision (b), could be arbitrary. In *Manduley*, our Supreme Court rejected a defendant's contention that prosecutorial discretion in deciding which cases involving minors to file in adult criminal court, under section 707, subdivision (d), resulted in an equal protection violation. (*Manduley*, at p. 573.) *Manduley* provides no support for respondent's position.

circumstances of the case, we shall remand the matter to permit the court to make an informed determination of appellant's maximum term of confinement. (See *People v. Downey, supra*, 82 Cal.App.4th at p. 912.)

## *DISPOSITION*

The matter is remanded to the juvenile court with directions to exercise its discretion in setting appellant's maximum term of confinement, pursuant to section 731, subdivision (b). The juvenile court's orders are otherwise affirmed.

Lambden, J., and Ruvolo, J., concurred.

Respondent's petition for review by the Supreme Court was denied June 22, 2005.