Filed 10/4/24  P. v. Franks CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E081394 |
| v. | (Super.Ct.No. FVI22002096) |
| JEREMY CHARLES FRANKS, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County. Debra Harris, Judge. Affirmed.

Jeanine G. Strong for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal and Susan Elizabeth Miller, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant shot another driver who confronted him over a driving incident. After appellant testified about the altercation and said he shot the victim in self-defense, the jury found him not guilty of murder but guilty of voluntary manslaughter. At sentencing,

1

the trial court determined the presumption of a lower term sentence required by Penal Code section 1170, subdivision (b) did not apply because appellant's youth was not a contributing factor to the offense's commission. The court found appellant had acted deliberately rather than impulsively based on his testimony about the incident. It imposed a mid-term sentence after considering aggravating and mitigating factors. He appeals on the ground that the trial court abused its discretion in failing to apply the lower term presumption. We affirm.

## I

## FACTS

A. *The Offense and Trial*

On July 24, 2022, appellant, Jeremy Charles Franks, his pregnant girlfriend, and their two young daughters were stopped at a stop sign in Victorville when a Jeep passed in front of them. Franks's car may have been protruding into the intersection a little. The Jeep's driver, Brock Moore, honked and made an obscene gesture as he passed. Moore then pulled past the intersection, stopped his vehicle, leaned over for something, and got out of the Jeep. Moore looked agitated.

Franks turned right and found Moore standing in the road. Franks stopped a little behind and to the left of the other vehicle. Franks got out of his car with a gun in his hand, and asked Moore if there was a problem. He stood behind his car door and seemed fairly calm. Franks's girlfriend said she heard Moore say, "Don't make me kill you" and

saw Moore put his hands in his sweater. Franks responded by shooting Moore in the head, killing him.

Police who responded to the scene found a partially opened folding knife next to the Jeep. They later found Franks's firearm under the passenger seat of his car. Franks told police he was afraid of Moore. He said Moore had said "[f]uck your kids" and then "flinched" at him. Franks grabbed his gun, pointed it at Moore, and told him to move. He said he thought Moore was reaching for a weapon and felt threatened.

Franks testified at trial. He said he got out of the car because he wanted to resolve the disagreement and for Moore to focus on him and not his family. He said he took his gun, which was already in the car, because the victim was acting aggressively, and he did not feel safe. He said he pointed his gun at Moore and told him to get back in his car and leave them alone. Moore laughed and said, "Fuck you" and pulled his right hand out of his pocket. Franks thought he had a gun and fired at him. After the shooting, he was in shock and just wanted to get his family somewhere safe.

The San Bernardino County District Attorney's office charged Franks with one count of murder (Pen. Code, § 187, subd. (a), unlabeled statutory citations refer to this code), alleged a personal use enhancement, and alleged aggravating circumstances under section 1170, subdivision (b)(2). On March 9, 2023, a jury found Franks guilty of the lesser offense of voluntary manslaughter. (§ 192, subd. (a).) The jury found true that Franks personally used a firearm within the meaning of section 12022.53, subdivision (b) and section 12022.5, subdivision (a).

3

At a separate bench trial on aggravating factors, the trial court found the crime "involved great bodily violence, great bodily harm, acts disclosing callousness if nothing else, a single shot to the head." The court also found the way Franks committed the crime indicated planning and that he had engaged in violent conduct that endangered the victim and everyone else in the area. The court also pointed out Franks suggested he did not know whether the victim was deceased but did not think about calling for help. The court found beyond a reasonable doubt that the aggravating factors were true and referred the matter to the probation department for a presentence report.

B. *Sentencing*

At the sentencing hearing, defense counsel argued section 1170, subdivision (b)(6)(B) required the court to consider Franks's youth when determining the sentence because he was 23 years old at the time of the shooting. Defense counsel argued his youth played a role in the commission of the crime as it affected his ability to make good decisions and control his impulses. The prosecutor disagreed, arguing Franks is a parent of four children, lived with his significant other since he was 18, and had maintained several jobs.

The court said, "[Defense counsel] has made an argument where in this case impulsivity and the time may be contributing factors. However, it's not persuasive to this Court because [his] defense, he testified in his own defense, was one of self-defense which goes against any type of youthfulness playing into that." The court concluded, it

would not "consider as a mitigating factor to—I would consider the youthfulness of the offender in general analysis, but not give it the weight under 1170(b)(6)(B)."

On May 24, the trial court held another hearing to put the factors in mitigation on the record. The trial court said, "I do find the nature and circumstances of the crime were serious, but not as compared to other crimes. As I said before, this was not a situation of road rage where the defendant followed the car home or for a distance or shot out of his vehicle into another vehicle. This was an instance where the victim himself pulled over, defendant pulled over, and they were out of the car, and it seemed to escalate from there." The court said it did not find the mitigated term to be appropriate and imposed the mid-term sentence. "I made the findings. I've looked at this, and I've considered them, and I considered the argument of [Franks's] youth that would normally tell me to go to the mitigating factors, and I don't find it mitigating enough." The court rejected finding the youthful offender mitigation appropriate because his testimony "dispels any impulsivity."

The court sentenced Franks to a total prison term of 10 years, which included the mid-term of six years for the voluntary manslaughter conviction and the mid-term of four years for the firearm enhancement, to be served consecutively. The court dismissed the section 12022.53, subdivision (b) enhancement.

## II

## ANALYSIS

Franks argues the trial court abused its discretion when it declined to apply the section 1170, subdivision (b)(6)(B) (section 1170(b)(6)(B)) presumption of a lower term

sentence. He argues that lack of judgment and poor decisionmaking are characteristics of youthful offenders, so the trial court's reasoning was flawed in concluding that a youth offender who acts in imperfect self-defense or provocation is not acting impulsively.

The general rule at sentencing is "[w]hen a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2)." (§ 1170, subd. (b)(1).) The trial court "may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify a term of imprisonment exceeding the middle term." (§ 1170, subd. (b)(2).)

Effective January 1, 2022, before Frank committed the offense, Assembly Bill No. 124 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 695, § 5) amended section 1170, subdivision (b) by adding paragraph 6, which limits a trial court's general discretion to impose a mid-term sentence. "Notwithstanding paragraph (1), and unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if . . . a contributing factor in the commission of the offense" was, among other factors, that "[t]he person is a youth or was a youth as defined under subdivision (b) of Section 1016.7 at the time of the commission of the offense." The amendment makes the lower term sentence the presumptive maximum term of imprisonment if a defendant's age (under 26 years old) was a "contributing factor" in his

commission of the offense. (§ 1170(b)(6)(B); see also § 1016.7, subd. (b) [defining youth as "any person under 26 years of age on the date the offense was committed"].)

Section 1170(b)(6)(B) "does not mandate a presumption in favor of the lower term in every case in which the defendant was under age 26 at the time the crime was committed. Instead, the presumption applies only if the defendant's youth was 'a contributing factor' in his or her commission of the offense." (*People v. Frederickson* (2023) 90 Cal.App.5th 984, 991 (*Frederickson*).) Thus, for the presumption to apply, there must be some initial showing that the defendant's youth played a causal role in leading him or her to commit the offense. (*Id.* at p. 992; see also *id.* at p. 993, fn. 7 ["the Legislature opted to require a finding of causation as to all of the circumstances in section 1170, subdivision (b)(6), and we have no authority to rewrite the statute"].)

Here, the court found Franks's youth was not a contributing factor in the commission of the offense based on his testimony and therefore declined to make the further discretionary decision whether the presumption of a lower term sentence should apply to him. We review the trial court's sentencing decisions for abuse of discretion. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847, superseded by statute on other grounds.) " 'A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence.' " (*People v. Gerson* (2022) 80 Cal.App.5th 1067, 1080 (*Gerson*).)

The threshold determination of whether youth is a "contributing factor in the commission of the offense" (§ 1170(b)(6)(B)), is " 'a quintessential factfinding process,' " and we therefore review that finding for support by substantial evidence. (*Gerson*, *supra*, 80 Cal.App.5th at p. 1079 [determination under section 1001.36, subdivision (b)(2) " 'whether the defendant's disorder *played a significant role* in the commission of the charged offense' " is factual and reviewed for substantial evidence, italics added].) We view the evidence in the light most favorable to the judgment and presume in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence. (*Gerson*, at p. 1079.) The evidence in support must be reasonable, credible, and of solid value, but otherwise it is the exclusive province of the factfinder, here the trial court, to make the determination, including by deciding about witness credibility and resolving conflicts or inconsistencies in testimony. (*Id.* at pp. 1079-1080.)

We conclude the trial court did not err by imposing a mid-term sentence. First, the parties disputed the presumption required by section 1170(b)(6)(B) and the trial court expressly addressed the provision and decided it did not apply. The case is therefore unlike *Frederickson*, where "[n]either party, probation, nor the trial court mentioned [the lower] term presumption in either briefings, reports, or argument at the sentencing hearing." (*Frederickson*, *supra*, 90 Cal.App.5th at p. 989.) The trial court did not fail to recognize and exercise its discretion. (*People v. Bigelow* (1984) 37 Cal.3d 731, 743; *In re Sean W.* (2005) 127 Cal.App.4th 1177, 1182 ["Failure to exercise a discretion conferred

8

and compelled by law constitutes a denial of a fair hearing and a deprivation of fundamental procedural rights, and thus requires reversal"].)

Franks challenges the trial court's finding that his age was not a contributing factor in the offense. The court's reasoning was grounded in Franks's testimony at trial. It said Franks's argument that he acted impulsively was "not persuasive to this court because [Franks's] defense, he testified in his own defense, was one of self-defense which goes against any type of youthfulness playing into that." Franks testified he believed he had the right to defend himself because the victim was behaving erratically and aggressively and appeared to be reaching for a weapon. He claimed to shoot the victim due to that provocation, and the jury appears to have credited that claim because they convicted him of voluntary manslaughter, not murder. The trial court found this testimony showed Franks did not act impulsively due to his youth, but rather that he reacted to a perceived threat and decided that lethal force was warranted.

The question before us is whether the trial court's finding was sufficiently supported by the evidence. Franks argues there is "no logical reason to conclude that a youthful offender who acts in imperfect self-defense or provocation is automatically deemed as not acting impulsively." That mischaracterizes the trial court as reaching a categorical conclusion. The court did not find that its conclusion flowed "automatically" from the jury verdict. Rather, at sentencing, defense counsel argued the trial evidence showed youth was a contributing factor because Franks acted impulsively in making a series of rapid decisions during a heated exchange. The prosecutor countered that the

9

testimony showed Franks made a series of deliberate decisions—to stop the car, retrieve the gun, exit the vehicle, confront Moore with the gun, and pull the trigger—that belied the claim he acted out of youthful impulsiveness. The court concluded Franks's argument was "not persuasive" because his testimony, stating his belief he was justified in defending himself, showed he acted deliberately, and the impulsivity of youth was not a contributing factor in his commission of the offense.

Franks's testimony provided substantial evidence from which the trial court could reasonably find against him on the threshold question. According to Franks, he stopped at a stop sign with the front of his vehicle protruding into the road. Moore drove past, honked, made an obscene gesture, leaned over to the passenger side of his car, and then stopped his vehicle and exited. Moore stopped in a way that blocked the right lane, forcing Franks to wait for two other cars to go by before attempting to go around him. At that point he saw Moore was yelling at him, and when he tried to go around, Moore stepped into the left lane. Franks stopped his car and "got out because I didn't know what he had reached for, and I knew he was upset with me. So, I wanted to exit the car just in case. I wanted to get everything away from my family. I wanted all the attention to be directly on me. And I also wanted to see what the—what the problem was. What did I do wrong." He said he took his gun because the victim was acting aggressively, and he did not feel safe. The two men argued. Franks urged Moore to get back in his car and let them go, and Moore refused to back down. Franks said he was scared and confused but was trying to calm Moore down. He told Moore he had his kids in the car and Moore

10

responded, "Fuck your kids" and flinched both his arms. At that point Franks said he tried to scare Moore by "point[ing] the gun at him, and I told him to get back in his vehicle and leave us alone." Franks said Moore "started laughing, and he said, 'Fuck you.' again. And then pulled his right hand out of his pocket, and I shot him. I fired the gun." Based on this testimony, we conclude the trial court's finding that Franks acted deliberately rather than impulsively and that his age was not a contributing factor in the commission of the offenses was supported by substantial evidence.

Franks suggests that the presumption of a lower sentence should apply because a young adult's poor decisions are necessarily caused by limitations in cognitive development. The Legislature could have taken that view and made age alone trigger a lower term sentence. Or the Legislature could have taken a middle path of making the presumption apply unless the prosecution proved youth was *not* a contributing factor, as it did in the pretrial diversion statute. Under that provision, a defendant diagnosed with certain mental disorders is eligible for pretrial diversion if the disorder "was a significant factor in the commission of the charged offense." (§ 1001.36, subd. (b)(2).) In that setting, the statute *requires* the trial court to find the disorder was a significant factor "*unless* there is clear and convincing evidence that it *was not* a motivating factor, causal factor, or contributing factor to the defendant's involvement in the alleged offense." (*Ibid.*, italics added.)

We apply the statute as the Legislature has written it. Section 1170(b)(6)(B) requires a finding that youth was a contributing factor to the commission of the offense

11

before the lower term presumption applies. While perhaps a trial court could conclude differently on these facts or similar ones, we cannot substitute our judgment as if we were the factfinder. We must affirm the trial court's judgment that youth was not a contributing factor in the commission of the offense so long as it was reasonable and based on the evidence. We conclude it was.

## III

## DISPOSITION

We affirm the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL _____
J.

We concur:


MILLER _____
Acting P. J.


MENETREZ _____
J.

12