Filed 5/15/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br>v.<br><br>JAMIR LOPEZ-TAPIA,<br><br>　　　Defendant and Appellant. | A169083<br><br>(San Mateo County Super.<br>Ct. No. 23NF003945A) |

　　　Jamir Lopez-Tapia was convicted of one count of witness dissuasion and sentenced to the middle term of two years in state prison, doubled to four years by operation of a prior strike allegation.  He argues that the trial court failed to comply with its obligation under Penal Code[1] section 1170, subdivision (b)(6) (section 1170(b)(6)) to apply a presumption in favor of the lower term based on his childhood trauma.  The parties agree that the court did not apply the presumption based on this factor because it expressly identified Lopez-Tapia's youth at the time of the offense as the only mitigating circumstance.  The Attorney General argues that we should affirm the judgment because (1) Lopez-Tapia forfeited this claim by failing to raise the presumption in the trial court; (2) there was no error in any event because there is insufficient evidence in the record that Lopez-Tapia's childhood trauma was a contributing factor in the commission of the offense; and (3) remand would be an idle act because the record shows that the trial

---

[1] Undesignated statutory references are to the Penal Code.

court would not apply the lower term regardless. We resolve the claim by concluding that Lopez-Tapia has failed to establish error.

## BACKGROUND

Lopez-Tapia was charged with a single count of witness dissuasion. (§ 136.1, subd. (b)(2)). The information further alleged that he had suffered two prior strike convictions (§§ 667, subd. (d); 1170.12, subd. (b)) and a serious felony conviction (§ 667, subd. (a)(1)), and that as a result of his prior convictions he is ineligible for probation (§ 1203, subd. (e)(4)).

At trial, evidence was presented that the victim attempted to drive Lopez-Tapia home after spending several hours with a group of mutual friends at a bar. According to the victim, Lopez-Tapia was asleep in the back seat when they arrived in South San Francisco. When he woke up, Lopez-Tapia "was begging [the victim] to take him to San Francisco" and then said, "Let me just drive the car. Let me drive the car." The victim initially agreed, but when Lopez-Tapia began driving erratically, he got scared and asked to be let out of the car. Lopez-Tapia let the victim exit the car and then drove away. After unsuccessfully trying to get in contact with Lopez-Tapia, the victim called 911 and reported his car as stolen.

The victim testified that he had no recollection of his statements to the police, despite the prosecutor's attempt to refresh his memory with a transcript of the conversation. The recording of his conversation with the police officer was played for the jury, in which the victim reported that Lopez-Tapia showed him a gun and told him to get out of the car before driving away. An officer testified that the victim was adamant at the time of the incident that he did not want Lopez-Tapia arrested or prosecuted for the incident because he was concerned that there would be retaliation and that

2

he would be labeled a snitch. The car was located about an hour after the victim reported it stolen and Lopez-Tapia was arrested.[2]

The following day, Lopez-Tapia made two phone calls from jail. During the first, he said, "[t]hey trying to get me for carjacking. . . . [T]hey trying to say I took [the victim's] car. I don't know if he called the cops, or what he tried to say. I don't know, I guess he called the cops and said I was, I carjacked him or whatever. He called the cops though." Later in the call, Lopez-Tapia said, "Damn bruh, that's fucking crazy. [The victim] really snitched on me." In the second call with the same person, Lopez-Tapia makes a statement in Spanish that was translated as follows: "Hey dude someone call that dude and tell him to drop the charges, dude." When Lopez-Tapia said, "talk to Manzo, bruh," the other person on the call responded, "I know, don't say nothing more. I already know what you're saying." Evidence was presented that Lopez-Tapia, the other person on the calls, and Manzo are all gang members.

Following trial, the jury found Lopez-Tapia guilty of the charged offense. After one of the prior strike convictions was dismissed by the prosecution, Lopez-Tapia admitted to having suffered one prior strike conviction (§ 1170.12, subd. (c)) and one serious felony prior (§ 667, subd. (a)(1)).

---

[2] The record shows that, based on this incident, Lopez-Tapia was charged in a separate case with one count of carjacking (§ 215, subd. (a)) and one count of unlawful taking of a vehicle (Veh. Code § 10851, subd. (a)) with various enhancement allegations. The jury acquitted him of the carjacking but convicted him of the lesser offense charged in count 2. He was sentenced to 32 months on that conviction. The present action was filed after the jury returned its verdict in the carjacking case.

Before the sentencing hearing, the court reviewed a probation report that described Lopez-Tapia's childhood.[3] According to the report, Lopez-Tapia, then 25 years old, "reported having a difficult childhood in which he grew up in a household that had frequent domestic violence incidents." "His father consumed alcohol frequently and would have outbursts when he was intoxicated." His father also engaged in extramarital affairs and his mother would involve him "in her search for his father when he was out with other women." When Lopez-Tapia was 11 years old, his father was incarcerated for domestic violence against his mother. "Due to his father's absences, his mother had to work longer hours and [he] was left alone frequently." As a result, he started rebelling, and at age 13 or 14, he joined a gang. Lopez-Tapia reported that he started using marijuana at age 9 and was using more frequently by the time he was 12 years old. He also tried alcohol for the first time at age 12, and prior to his incarceration, he was drinking alcohol twice a week. When he consumed alcohol, he typically consumed to the point of intoxication. Lopez-Tapia may have been expelled from school due to fighting but, in any event, he did not complete high school. At age 16, he was shot in the neck, leading to nerve damage. The probation report identifies Lopez-Tapia's age as the only circumstance in mitigation under California Rules of Court, rule 4.423.

The prosecutor's sentencing memorandum requested imposition of a 9-year term: the middle term doubled for the strike, plus an additional five years for the serious felony allegation. It also indicated that the only

---

[3] Defense counsel waived preparation of a probation report and the parties stipulated to the court's review of the probation report that had been prepared for sentencing in the related case.

4

circumstance in mitigation was that Lopez-Tapia was under the age of 26 at the time of the offense.

Defense counsel did not file a sentencing memorandum identifying any circumstances in mitigation, but based on the facts and circumstances of the case, moved to dismiss the prior convictions, requested that the court reduce the offense to a misdemeanor, and sought imposition of a sentence that runs concurrent with the 32-month sentence imposed on his related conviction.

At sentencing, the court imposed the middle term of two years for his conviction, which was doubled due to the prior strike conviction, for a total of four years in prison. The court ordered that the sentence run consecutively to the sentence imposed in the related case. The court dismissed the prior serious felony allegation (§ 667, subd. (a)) in the interests of justice.

In selecting the middle term, the court noted that "pursuant to California Rule of Court 4.420, the only circumstance in mitigation is that the defendant was a youth as defined under Penal Code Section 1016.7(b) at the time of the commission of this offense." The court identified the following aggravating circumstances: "The victim in this case was particularly vulnerable. He was concerned for his own welfare after reporting the crime that was perpetrated against him by the defendant, and then the victim did, in fact, attempt repeatedly to prevent criminal charges against and prosecution of the defendant due to fear for his own safety. The Court—the defendant did induce others, namely another member of the Cypress Park Locos gang, to talk to the victim and get him to change his story. The defendant did threaten a witness and did illegally interfere with the judicial process. The defendant purposely spoke in Spanish to avoid detection when he specifically asked his fellow gang member to contact the victim and tell him to change his story, demonstrating a certain level of planning and

5

sophistication. The defendant does have two prior convictions for serious and violent felonies wherein he was released from custody and had been on parole for less than six months when he engaged in the criminal behavior for which he was convicted of Vehicle Code Section 10851 and the Penal Code 136.1 in this case. Again, the defendant was on parole at the time of the commission of this offense and was also in violation of his parole conditions in that he continued to affiliate with known gang members and obtained an additional gang tattoo while in custody on this case." Ultimately, the court concluded that these aggravating circumstances "outweigh the mitigating circumstance."

The court stated: "Before pronouncing sentence, Mr. Lopez-Tapia, I also want to comment directly to you. I did review the probation report, as I indicated. I recognize that your childhood was less than optimal in terms of setting you up for success. You witnessed far too much violence at a very young age, but your choice to continue to engage in gang activity is your choice. I hope if you learned nothing else from this trial they're not your friends and they're not your family. I hope and I appreciate the fact—and I commend you for spending your time while in custody here at the Maple Street facility—that you have used that time to take some classes that hopefully will start to get through to you that your choices need to be different. You are very young, and there is still time."

## DISCUSSION

Under section 1170(b)(6), "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances [so] that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense: [¶] (A) The person has experienced

6

psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence. [¶] (B) The person is a youth or was a youth as defined under subdivision (b) of Section 1016.7 at the time of the commission of the offense. [¶] (C) Prior to the instant offense, or at the time of the commission of the offense, the person is or was a victim of intimate partner violence or human trafficking."

Here, the trial court identified Lopez-Tapia's youth as a mitigating factor, and although it never expressly referred to the presumption under section 1170(b)(6), Lopez-Tapia does not argue that the court failed to apply it based on that factor. The Attorney General, for his part, does not argue that the court either did apply or must be presumed to have applied the presumption based on childhood trauma, since the court expressly stated that the "only" mitigating circumstance was Lopez-Tapia's youth. In other words, this is not a case in which the parties disagree about *whether* the trial court applied the presumption. (Cf. *People v. Nielsen* (2026) 119 Cal.App.5th 816, 823; *People v. Caparrotta* (2024) 103 Cal.App.5th 874, 905–906.) So far as childhood trauma is concerned, the parties agree the court did not. The question is whether that failure constitutes reversible error.

## I.

Before we get to the merits, the Attorney General acknowledges a "split of authority" on the issue, but argues that Lopez-Tapia forfeited his claim by failing to object or to ask the trial court to apply the lower term presumption based on childhood trauma. In *People v. Fredrickson* (2023) 90 Cal.App.5th 984 (*Fredrickson*), the court concluded that the forfeiture doctrine does not apply to a claim that the trial court failed to comply with section 1170(b)(6), reasoning that the trial court has a mandatory duty to apply the presumption once it has been triggered by evidence in the record. (*Id.* at p. 994, fn. 8.)

7

*Fredrickson* followed *People v. Panozo* (2021) 59 Cal.App.5th 825, 840 (*Panozo*), in which the court held that application of the forfeiture doctrine is inappropriate where the claim on appeal is that the trial court failed to comply with a mandatory sentencing obligation. "Once Panozo 'allege[d] that [he] . . . committed the offense as a result of . . . [PTSD] . . . stemming from service in the United States military' (§ 1170.9, subd. (a)), the court was statutorily required to make an eligibility determination and consider service-related mitigating factors at sentencing. There is no indication the court did either, and forfeiture in this context is inappropriate." (*Panozo*, at p. 840; see *In re D.L.* (2012) 206 Cal.App.4th 1240, 1244 [no forfeiture where the claim on appeal is that "the court failed in its mandatory duty" to assess the minor's eligibility for deferred entry of judgment].) *Panozo* added that the defendant was not challenging *how* the trial court exercised its discretion, but rather claimed that the court misapprehended its discretion in the first place—a claim to which forfeiture does not apply. (*Panozo*, at p. 840; see *In re Sean W.* (2005) 127 Cal.App.4th 1177, 1181–1182.)

*Fredrickson* pointed out that "the initial showing [to trigger application of the lower term presumption] need not be made by the defendant; the showing could be made by the prosecution or by facts or recommendations in a probation officer's report. And the defendant need not specifically request application of the lower term presumption if the record shows [the qualifying condition] contributed to commission of the underlying offense." (*Fredrickson, supra*, 90 Cal.App.5th at p. 994, fn. 8.) To be sure, trial courts reasonably expect counsel to identify and argue applicable aggravating and mitigating circumstances, and where a case can reasonably be made, defense attorneys have an obligation to present evidence and argument that the defendant has a mitigating circumstance requiring application of the lower

8

term presumption under section 1170(b)(6). Nonetheless, because the trial court's obligation to apply the lower term presumption may arise even when the defendant has neglected to invoke it, on this record we agree, in accordance with *Frederickson*, that forfeiture is inappropriate based on Lopez-Tapia's failure to do something not mandated in the statute as a requirement to trigger the presumption.

The Attorney General relies principally on *People v. Achane* (2023) 92 Cal.App.5th 1037. In that case, however, the court held only that the unauthorized sentence exception to the forfeiture doctrine does not apply to a claim that the trial court failed to apply the presumption under section 1170(b)(6) because the resulting sentence is neither one that could not lawfully be imposed under any circumstances nor corrected without further factual determinations. (*Achane*, at p. 1044.) Lopez-Tapia does not rely on the unauthorized exception to the forfeiture doctrine. The *Achane* court did not cite *Fredrickson*, nor did it consider any of the arguments, previously analyzed in *Panozo*, on which *Fredrickson* relied to conclude that the forfeiture doctrine does not apply. Because cases are not authority for propositions not considered (*B.B. v. County of Los Angeles* (2020) 10 Cal.5th 1, 11), *Achane* does not call into question the analysis in *Fredrickson* and *Panozo*.

Without discussion, the Attorney General also cites *People v. Anderson* (2023) 88 Cal.App.5th 233 and *People v. Tilley* (2023) 92 Cal.App.5th 772, both of which relied on the rule in *People v. Scott* (1994) 9 Cal.4th 331, 356 that "complaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal." *Anderson* did not involve section 1170(b)(6); it applied the forfeiture doctrine to a claim that the trial court erred by

9

imposing the upper term without citing any factors in aggravation. (*Anderson*, at p. 241.) As for *Tilley*, like *Achane* it was decided two months after *Fredrickson* but did not cite it. It characterized the defendant's claim as one that "the trial court abused its discretion by imposing the middle term" because it undertook no meaningful analysis of his mental condition nor referred to section 1170(b)(6). (*Tilley*, at p. 777.) On that basis, it relied on *Scott* to conclude that the claim was forfeited. (*Id.* at p. 778.)

The *Panozo* court, however, expressly distinguished *Scott* when it explained that the defendant was not challenging "the manner in which the trial court *exercised* its sentencing discretion but rather its apparent misapprehension of statutory sentencing obligations." (*Panozo, supra*, 59 Cal.App.5th at p. 840.) While we do not know how the defendant in *Tilley* framed his claim, we think a claim that the court was unaware of its mandatory obligation under section 1170(b)(6) to apply a presumption in favor of the lower term more closely resembles a claim that the trial court misapprehended the scope of its discretion, and therefore should not be subject to forfeiture for the reasons described in *Panozo* and *Fredrickson*.

What gives us some pause here, however, is that the trial court applied the lower term presumption based on Lopez-Tapia's youth—or at least, Lopez-Tapia does not contend that it failed to do so. If the court applied the presumption based on that factor, it is difficult to conclude that it was unaware of the statute's similar requirement for childhood trauma. One way to read the record—although not the only way—is that the court, after applying the presumption based on Lopez-Tapia's youth, considered the evidence of childhood trauma in the record and concluded that it did not trigger the presumption because there was insufficient evidence that it was contributing factor in the commission of the offense. Since the parties do not

frame their arguments this way, we need not decide whether forfeiture applies to a claim that a court, mindful of the lower term presumption in section 1170(b)(6), abused its discretion by finding that childhood trauma was not a contributing factor. In any event, even assuming that forfeiture applies, we may address a claim of sentencing error notwithstanding the defendant's failure to preserve it. (*People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6.) Under these circumstances, we will consider the claim on its merits.

## II.

The lower term presumption applies only if (1) the defendant has one of the qualifying conditions identified in the statute; and (2) that condition was a "contributing factor in the commission of the offense." (§ 1170(b)(6); see *People v. Hilburn* (2023) 93 Cal.App.5th 189, 205.) Here, the parties do not dispute that there was sufficient evidence in the record that Lopez-Tapia experienced childhood trauma, so we need consider only the second step of the inquiry.

Both parties cite the statement in *Fredrickson, supra*, 90 Cal.App.5th at page 994, that the trial court has an obligation to apply the lower term presumption "when the record and/or arguments are sufficient to put a trial court on notice that a defendant's [qualifying condition] may have been a contributing factor in commission of the underlying offense." We recently applied that standard in *Nielsen, supra*, 119 Cal.App.5th at p. 824, concluding that the evidence in the record was sufficient to trigger the presumption because the defendant's childhood trauma was a contributing factor to his substance abuse, which in turn contributed to his commission of auto theft. Although *Nielsen* was decided after the briefing in this case was complete, Lopez-Tapia offers a somewhat similar chain of reasoning here:

11

His childhood trauma was a contributing factor in his decision to join a gang at a young age, and his gang membership in turn contributed to his commission of the offense. He cites research showing the lasting effects of childhood trauma and the increased likelihood that someone with those experiences will join a gang. The Attorney General relies on the result in *Fredrickson* itself, where the defendant conceded on appeal that "there is no indication in the record that [her] youth was a 'contributing factor' in her commission of the underlying offense," and the court accordingly found that the presumption was not triggered. (*Fredrickson*, at p. 995.) According to the Attorney General, Lopez-Tapia's reliance on scientific research that was not before the trial court is a tacit concession that the requisite evidence of a connection was not in the record.

Although section 1170(b)(6) requires a finding that the defendant's qualifying condition was a contributing factor to the offense, the Legislature set a relatively low threshold for this finding. (See, e.g., *People v. Banner* (2022) 77 Cal.App.5th 226, 241 ["a contributing factor (§ 1170, subd. (b)(6)) is less than a significant factor" that is required for mental health diversion under section 1001.36, subd. (b)(1)(B)]; *People v. S.H.* (2025) 116 Cal.App.5th 1064, 1085 [contributing factor under section 1170(b)(6) is less than the "direct result" required for intimate partner violence under section 236.15]); see also Couzens et al., Sentencing California Crimes (The Rutter Group 2024) § 12:7 ["It seems clear the Legislature's use of 'contributing factor' implies a factor far less significant than one which 'substantially contributed' to the crime"].) The qualifying condition may be remote in time, the connection may be indirect, and the evidence of it may be less than straightforward. (Cf. *Nielsen, supra*, 119 Cal.App.5that p. 824.) It is reasonable to infer that, by setting a low threshold for the presumption, the

12

Legislature intended that courts would apply it notwithstanding these foreseeable complexities and difficulties in proof. Nonetheless, we agree with the Attorney General that it is not enough for the evidence to show only that Lopez-Tapia experienced childhood trauma.

According to Lopez-Tapia, "[w]hile probation's report did not directly link [his] childhood trauma to the commission of the crime, its explanation of [his] trauma, his subsequent adjustment difficulties, and his ensuing association with the Norteño street gang makes this connection clear." He writes that his " 'escalating delinquent behavior' leading to gang entry was quick and . . . likely the result of his childhood trauma." We agree that the probation report contained sufficient evidence of this first connection. It explains, for example, that Lopez-Tapia began associating with gang members after years of exposure to domestic violence and shortly after his father was incarcerated.

Lopez-Tapia argues that evidence that his gang affiliation in turn contributed to his commission of the offense was furnished by the testimony of the gang expert that the gang's "primary activities" include crimes like witness dissuasion—along with drug sales, robbery, grand theft, burglary, and assault with a deadly weapon—and by evidence that Lopez-Tapia asked another gang member to tell the victim to drop the charges. We do not disagree with this argument as far as it goes; the trial court itself stated at the hearing that Lopez-Tapia induced another member of the Cypress Park Locos gang "to talk to the victim and get him to change his story." But we are not persuaded that section 1170(b)(6) requires a court to find that childhood trauma is a contributing factor to any offense accomplished through gang connections simply because trauma may have been a contributing factor in the defendant joining a gang in the first place. The threshold for a

13

contributing factor may be low, but it permits more nuanced judgment than Lopez-Tapia offers by this syllogistic rule. There was no suggestion here, for example, that Lopez-Tapia was subject to gang pressure to commit the offense, or that the circumstances of or motives for its commission were connected somehow to the nature of his childhood trauma. There was no evidence of the sort in *Nielsen*, which involved a theft offense, that when the defendant was a teenager his father had given him "drugs to rob homes and bring stolen items back to him," or even more generally that "his child[hood] trauma has led him to live the only way he knows how[.]" (*Nielsen, supra*, 119 Cal.App.5th at p. 824.) "Of course, it is possible facts or arguments could have been developed that would have constituted such an initial showing" (*Fredrickson, supra*, 90 Cal.App.5th at p. 994), but we do not see it on the present record.

Both parties focus on the trial court's statement to Lopez-Tapia: "You witnessed far too much violence at a very young age, but your choice to continue to engage in gang activity is your choice." To Lopez-Tapia, this statement shows the court was "dismissive[] of appellant's trauma [and] suggests that it was unaware of its sentencing obligation under section 1170(b)(6)." To the Attorney General, by contrast, it simply confirms that there was insufficient evidence of a connection to trigger the presumption: "The court was not obligated to extrapolate a connection between childhood trauma and what appeared to be, based upon the available evidence on the record, a seemingly unrelated criminal offense."

The quoted statement is one the court addressed directly to Lopez-Tapia, evidently to urge him to sever his gang ties going forward. As the court immediately added, "I hope if you learned nothing else from this trial they're not your friends and they're not your family. . . . I commend you for

14

spending your time while in custody . . . to take some classes that hopefully will start to get through to you that your choices need to be different. You are very young, and there is still time." If it were true that the court's comment betrayed a dismissive attitude to the significance of childhood trauma, we could agree that it would be at odds with the Legislature's purposes in enacting section 1170(b)(6). (See *People v. Hayde* (2025) 113 Cal.App.5th 587, 599 ["it is difficult to understand why the court, having acknowledged the horrific and extreme abuse Hayde suffered as a child, would dismiss the impact of section 1170, subdivision (b)(6)(A)"].) Enduring effects may be considered one of the defining features of trauma. (See *People v. Reid* (2024) 105 Cal.App.5th 446, 461 ["one common meaning of 'trauma' is ' "emotional wound or shock that creates substantial, lasting damage" ' "], quoting *U.S. v. Moses* (6th Cir. 1998) 137 F.3d 894, 899.) But in context, the court's use of the word "choice" cannot fairly be read to mean it thought, simplistically, that there was a point at which Lopez-Tapia was no longer affected by his childhood trauma and decided to persist in the same ways. It was an effort to encourage him to set himself on a better path, praising him for the steps he was already taking while in custody.

In sum, because we do not see evidence in the record that Lopez-Tapia's childhood trauma was a contributing factor in his commission of witness dissuasion, we find no error in the trial court's failure to apply the lower term presumption based on it.

15

## DISPOSITION

The judgment is affirmed.

GOLDMAN, J.

WE CONCUR:

STREETER, Acting P. J.
SWEET, J. *

---

*Judge of the Marin Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

| | |
|---|---|
| Trial Court: | San Mateo County Superior Court |
| Trial Judge: | Honorable Rachel E. Holt |
| Counsel for Defendant and Appellant: | Keith Fox, under appointment by the Court of Appeal |
| Counsel for Plaintiff and Respondent: | Rob Bonta<br>Attorney General of California<br>Charles C. Ragland<br>Chief Assistant Attorney General<br>Jeffrey M. Laurence<br>Senior Assistant Attorney General<br>Eric D. Share<br>Supervising Deputy Attorney General<br>Maya Bourgeois<br>Deputy Attorney General |

17